BOBBY M. AND KAY C. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket Nos. 22184-89 22623-91 22719-91
United States Tax Court
T.C. Memo 1994-199; 1994 Tax Ct. Memo LEXIS 195; 67 T.C.M. (CCH) 2887; May 3, 1994, Filed *195 Decision will be entered for respondent with respect to Mr. Smith and for petitioner, with respect to Mrs. Smith. For Bobby M. Smith, petitioner: S. Dennis Joiner. For Kay C. Smith, petitioner: Harris H. Barnes III and Gordon Broom. For respondent: Linda J. Wise. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by means of a joint notice of deficiency for 1982 and individual notices of deficiency for 1981 and 1984, determined income tax deficiencies in and additions to tax for petitioners, as follows: Additions to Tax
Income Sec.
Sec. Sec. Sec. Year
Tax
6653(b) [1]
6653(b)(1) [1]
6653(b)(2) [1]
6661 1981
$ 82,379.00
$ 41,190
--
--
--  1982
61,376.93
-- $ 30,688.47
[2]
$ 15,344.23
1984
38,062.00
-- 19,031.00
[2]
9,516.00
*196 All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. The parties have stipulated that the income tax deficiencies determined by respondent are correct in amount and the issues [1] remaining for our consideration are: (1) Whether petitioner Bobby M. Smith is liable for additions to tax for fraud under section 6653(b) for 1981 and section 6653(b)(1) and (2) for 1982 and 1984; and (2) whether petitioner Kay C. Smith is an innocent spouse within the meaning of section 6013(e). *197 FINDINGS OF FACT A. Background
The parties have stipulated facts and exhibits which are incorporated by this reference. Petitioners resided in Union, Mississippi, at the time of the filing of their petitions in these consolidated cases. Petitioners were married in 1966 and separated during 1986, and divorced during 1990. Petitioners were born and raised in and around the small town of Union, Mississippi, population 1,700. Petitioners filed joint Federal income tax returns for each of the years 1981, 1982, and 1984. Petitioner, Bobby M. Smith (Mr. Smith), was born in 1938 and completed his formal education with his 1956 high school graduation. Petitioner, Kay C. Smith (Mrs. Smith), was born in 1944 and completed her formal education with her 1966 and 1967 graduations from the University of Mississippi earning a Bachelor of Science Degree and a Masters Degree in Health, Physical Education and Recreation, respectively. Mrs. Smith did not receive any formal training in accounting, business, or tax matters. Petitioners had a daughter (Bobbie Kay) during 1968 who lived with them and was claimed as a dependent during the years before the Court. From the time of their marriage, *198 until they built their own home in 1974, petitioners resided with Mrs. Smith's parents. Mrs. Smith's parents provided petitioners with their food, utilities, and lodging without charge. In addition, Mrs. Smith's parents were generous with petitioners and their child and made cash gifts to them on regular occasions. The cash gifts from Mrs. Smith's parents ranged from a high of $ 30,000 to a low of $ 5,000 during the period 1978 through 1992, and the total was $ 217,600. Upon Mrs. Smith's father's death in 1981, Mrs. Smith received $ 21,000, which was the proceeds of a certificate of deposit that had been held jointly by Mrs. Smith and her father. The new residence was built on land adjacent to Mrs. Smith's parent's home in 1974. During the period of the completion of the house, Mrs. Smith's parents made two, $ 5,000 gifts to petitioners. After moving into the new residence, meals would generally be taken at Mrs. Smith's parent's home. The new residence was a four-bedroom home situated on about 5 to 7 acres of land, and a swimming pool was added. Petitioners served as contractor, and purchased materials and hired people to perform the work. Mrs. Smith was substantially involved *199 in hiring carpenters, purchasing building materials, and some portion of the new home was paid for with money Mrs. Smith had earned as an educator. Mrs. Smith also purchased a 1982 Mercedes automobile for $ 22,900 sometime in early 1982. It was purchased with money Mrs. Smith had saved. B. Business Entities and Financial Activity
Prior to his marriage, Mr. Smith owned a convenience store and was a 50-percent partner in a furniture store, both in Newton, Mississippi. During 1968, Mr. Smith became the sole owner of the Newton furniture store. In 1969 and 1971, Mr. Smith began operation of a gravestone business and an automobile dealership, respectively. Mrs. Smith was an educator at the college level until 1972 when her father gave her a building in Union (Union building), Mississippi. Mrs. Smith quit her college position and, together with Mr. Smith, opened a furniture store in the Union building. Also during 1972, Mr. Smith opened a recreation center (poolhall) in space owned by Mrs. Smith's father. Petitioners, during 1981, began operation of a jewelry and pawnshop in the Union building. These businesses were operated in connection with the furniture store. Mrs. *200 Smith, along with one employee Cheryl Chaney (Ms. Chaney), worked at the Union building store. Ms. Chaney did bookkeeping, check writing, and selling, and Mrs. Smith generally was involved in sales, working long hours each day. On relatively rare occasions, Bobbie Kay helped out at the Union store. Mr. Smith was the owner of most and overall director of all business entities, including the Union building businesses, and he spent relatively little time at each location. During 1980 through 1984, petitioners maintained two checking accounts and one savings account at the Newton County Bank; and five checking accounts at the People's Bank of Mississippi. The savings account was in the name of Bobby M. or Kay Smith. Petitioners had signatory authority over all checking accounts and Ms. Chaney was named on the checking accounts concerning the monument, furniture, jewelry and pawnshop accounts. The business entities had a limited number of employees. Being located in small towns (Newton and Union) everyone in town knew where to find petitioners when they needed a product. Mr. Smith hired Ms. Chaney (who is Mrs. Smith's first cousin) during 1980 to be the bookkeeper of his various *201 businesses, including those located in the Union property. Ms. Chaney had earned a degree from Draughan's Business College in 1972. Ms. Chaney would prepare the ledger sheet and remit them to petitioners' accountant on specified periodic occasions. Ms. Chaney also handled the cash, made bank deposits, and performed the inventories at the stores located in Union. Mrs. Smith did not assist with the bookkeeping and did not inquire of Ms. Chaney about business matters or the financial condition of Mr. Smith's businesses. Ms. Chaney took her instructions from and made business-related inquiries to Mr. Smith. Sometime prior to the January 22, 1979, incorporation, Mr. Smith began operation of a chain of beauty salons which operated under the nationally-known name "Command Performance". The beauty salons were operated in Natchez, Vicksburg, Jackson, and Meridian, Mississippi. The corporation was under subchapter C and losses in the amounts of $ 79,113.11, $ 181,837.23, $ 146,009.26, $ 81,765.84, and $ 14,894.88 were reported for the taxable years ended March 31, 1981 through March 31, 1985. During the years in issue, Mr. Smith also made investments in various other business ventures, *202 including oil and gas interests, bank and other shares of stock, futures commodity contracts, municipal bonds, treasury bills, certificates of deposit, and rental real estate. Mr. Smith did most of the purchasing of the furniture, jewelry, gravestones, and merchandise for the businesses. Mr. Smith purchased and sold assets and investments, and operated the various businesses generally without consulting with Mrs. Smith. Mr. Smith participated in a club known as the Titanic Investment Co., which was an investment and men's social club with poker as one of the social activities. Mr. Smith was a gambler who wagered on games of chance and sporting events. He also participated in gaming, such as poker, shooting dice, and coin matching. Mr. Smith was observed matching or flipping coins for $ 100 and for $ 1,000 per chance. Mr. Smith was observed winning or losing as much as $ 5,000 in a dice game. C. Tax Return Preparation
Beginning with 1967, petitioners filed joint Federal income tax returns. With the exception of the beauty parlors, which were reported on a separate corporate return, all of petitioners' business activity were reported on the Schedules C attached to their *203 jointly filed individual Federal income tax returns. During the years in question, petitioners' tax returns were prepared by Barbara J. Russell (Ms. Russell), a liberal arts college graduate who learned accounting and tax return preparation by practical experience. Beginning in 1966, Ms. Russell became associated with W.T. Blackwell, the only accountant/tax preparer in Union, Mississippi, during the years in issue. Ms. Russell, in December 1983, bought out W.T. Blackwell and became the sole owner of the business. Ms. Russell has known Mrs. Smith most of their lives and has also been acquainted with Mr. Smith. From 1976, Ms. Russell performed writeup work consisting of preparing journals and ledgers from bank statements and records and reconciling bank accounts. Ms. Russell prepared petitioners' 1981, 1982, and 1984 Federal income tax returns. The returns were prepared from records provided by petitioners consisting of Forms 1099, Forms K-1, bank statements, canceled checks, deposit slips, and certain journals maintained by Ms. Chaney. In connection with tax return preparation each year, Ms. Russell would ask petitioners to bring in anything relating to their personal or business *204 records to enable her to file a return. Petitioners were aware that they had to provide information concerning inventories, the purchase and sale of capital assets and related business matters. Once the return was prepared, on occasion, one or both petitioners would review the results of each business and the amounts reported on the returns. Interest on certificates of deposit and some dividends were not brought to Ms. Russell's attention in connection with the preparation of the 1981, 1982, 1983, and 1984 income tax returns, and accordingly were not included on those returns. Ms. Russell was not aware of the interest or dividends, or any unreported income at the time of the preparation and filing of petitioners' 1981, 1982, and 1984 tax returns. D. Respondent's Audit and Results
Brenda Moss (Agent Moss), an internal revenue agent since about 1979, was assigned to audit petitioners' 1982 income tax return in February 1985. Agent Moss commenced the audit at the Union property stores in the presence of Mrs. Smith only. Mrs. Smith provided Agent Moss with bank statements and then the two of them proceeded to Ms. Russell's office where Agent Moss proceeded to review various *205 records. Agent Moss came across a $ 100,000 withdrawal from one of petitioners' bank accounts and a second meeting was scheduled to, in part, address that item. Mr. Smith attended the second meeting during July 1985 and advised that he did not know the purpose of the $ 100,000 withdrawal. Agent Moss summonsed the records of the bank and found that the $ 100,000 was withdrawn to purchase a $ 100,000 U.S. Treasury bill (T-Bill). Agent Moss brought this to Mr. Smith's attention and he became disturbed and uncooperative. Thereafter, Agent Moss referred petitioners' income tax matter to respondent's Criminal Investigation Division. While accompanying a criminal investigator to petitioners' home, Agent Moss observed that Mr. Smith was wearing gold and diamond studded jewelry, including a necklace and pendant, watch, and ring. After that visit, the 1983 tax year was added to the investigation. Mrs. Smith was cooperative with Agent Moss until the time that Mr. Smith was advised that he was under criminal investigation on or about November 7, 1985. Following the criminal investigation, Mr. Smith was prosecuted for violations of section 7201 for 1981, 1982, 1983, and 1984 and on September *206 21, 1988, was found guilty only with respect to the 1983 year. Mr. Smith's conviction was affirmed by the Court of Appeals for the Fifth Circuit on December 4, 1989. Respondent, in the notices of deficiency, determined deficiencies in petitioners' 1981, 1982, and 1984 income tax in the amounts of $ 82,379, $ 61,376.93, and $ 38,062, respectively. The income tax deficiencies were computed by means of a reconstruction of income by the net worth method, computations of which were attached to the notices of deficiency. The parties agree that the net worth computations attached to the notices are substantially correct and that the income tax deficiencies are correct. The taxable income reported by petitioners and the corrected taxable income and understatements determined by respondent for 1981 through 1984, are as follows: Taxable Income (or Loss)
Reported
Year
by petitioners
Corrected Understatement
1981
$ 16,951.10 $ 165,736.01
$ 148,784.91
1982
18,171.04 146,838.54
128,667.50
1983
(10,507.20)
135,369.70
145,876.90
1984
35,907.35 116,897.30
80,989.95
The income tax liability reported by petitioners and the corrected liability and deficiencies *207 determined by respondent for 1981 through 1984, are as follows: Income Tax Liability Reported
Year
by petitioners
Corrected
Deficiency
1981
$ 3,149.61
$ 85,529.00
[1] $82,379.00
1982
1,608.95
62,985.88
61,376.93
1983
819.72
57,258.72
56,439.00
1984
6,819.80
44,882.00
[1] 38,062.00
During 1982, Mr. Smith withdrew $ 100,000 from one of the bank accounts and purchased a T-Bill. Two interest payments of $ 6,937.50 each were received during 1982 in connection with the T-Bill and not reported on the 1982 tax return. During 1981, Mr. Smith made stock purchases, through a bank in Meridian, Mississippi, in National Gypsum for $ 30,298.63, received $ 1,850 in dividend payments during 1982, and sold the National Gypsum stock for a loss in 1982. The purchase of the stock was made by means of three separate $ 10,000 and one $ 298.63 cashier's checks, each on a different day. There is no indication how the cashier's checks were purchased. The dividends and sale of the National Gypsum stock were not reported on the 1982 return and not revealed to Ms. Russell, the return preparer. *208 The 1982 sale of the National Gypsum stock at a loss was eventually revealed to Ms. Russell and claimed on petitioners' 1983 income tax return. Mr. Smith opened a safety deposit box and had other banking transactions in Meridian, Mississippi, in the name "Mack" Smith and used a friend's Collinsville, Mississippi, address in connection with the safety deposit box. Mr. Smith was not known by the name "Mack", even though it was his middle name. There was no business reason offered for the safety deposit box in Meridian. The 1981 through 1984 income tax returns were prepared based upon the records prepared by or at the direction of Mr. Smith, and those records were inadequate and did not reflect all of the income that should have been reported on petitioners' tax returns. Mr. Smith purchased: A 1982 Corvette for $ 18,949.64 during 1981; a 1982 Camaro Z-28 for $ 12,905.69 during 1982; a 1984 Monte Carlo for $ 12,105.69 during 1984; a 1985 Corvette for $ 24,401.30 during 1984; a 1976 Chevrolet Blazer for $ 2,300 during 1983; a 1982 Corvette for $ 6,000 to $ 7,000 during 1982; a 1980 L-82 Corvette for $ 10,000 during 1983; a 1984 Corvette for $ 24,000 during 1983, a 1974 Corvette for *209 $ 5,000 during 1982; and a 1982 Cadillac Eldorado for $ 12,000 during 1982. All of the vehicles were purchased for cash, with the exception of the 1984 Monte Carlo. Mr. Smith, when asked if he gambled, advised Agent Moss that he did not. Mr. Smith's responses to respondent's agents were occasionally flippant. E. Innocent Spouse Aspects
As in the business relationship, Mr. Smith dominated Mrs. Smith in their personal or home relationship. Mr. Smith controlled financial matters and Mrs. Smith was permitted a monthly amount for purchase of necessities. That monthly amount was $ 600 and was taken from the Union property stores in the form of salary to Mrs. Smith. Petitioners kept their financial matters separate. When Mrs. Smith was paid a salary by an educational institution, she would deal with the money on her own. On the other hand, Mr. Smith was considered the owner of petitioners' businesses and investments, and he controlled all financial aspects concerning those matters. Mrs. Smith was able to save her salary from her professional activity as a teacher due to her parents' providing room, board, and utilities from 1967 through 1974 when petitioners built their *210 own home. Mrs. Smith also received substantial gifts from her parents and those amounts were saved and used, along with Mrs. Smith's education salary, to build petitioners' home. The land for petitioners' home was gifted by Mrs. Smith's parents and was contiguous to the parents' home site. Petitioners did not have a good relationship, and Mr. Smith traveled and was not in the household most of the time. Mr. Smith would be away 3 and 4 days at a time, and he would see to business matters and party (drink and socialize). Mrs. Smith generally did not inquire about investments, businesses, or Mr. Smith's whereabouts. Mrs. Smith took money from the Union stores to operate petitioners' household. In addition, Mrs. Smith received money from her parents. Other than the $ 600 per month salary from the Union property stores, Mrs. Smith did not receive money from Mr. Smith for operation of their household or purchase of necessities. Mrs. Smith was conservative in that she generally did not purchase clothing unless the item was on sale and did not spend much for her wardrobe or accouterments. In general, Mrs. Smith did not have much knowledge about the businesses of Mr. Smith. She *211 wrote checks occasionally at Mr. Smith's request, but did not become involved in financial matters or the business records. Mrs. Smith, following the traditional roles in her mother and father's relationship, was subservient to Mr. Smith. OPINION Additions to Tax for Fraud
Respondent determined, with respect to Mr. Smith only, that all of the underpayments of tax are due to fraud under section 6653(b) for 1981 and section 6653(b)(1) and (2)[2] for 1982 and 1984. Section 6653(b) and (b)(1) provide that, if any part of the underpayment is due to fraud, there will be an addition to tax equal to 50 percent of the entire underpayment. The addition to tax under section 6653(b)(2), however, applies only to that portion of the underpayment attributable to fraud. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Powell v. Granquist, 252 F.2d 56 (9th Cir. 1958); Miller v. Commissioner, 94 T.C. 316, 332 (1990). *212 Respondent has the burden of proving by clear and convincing evidence that an underpayment exists for the years in issue and that some portion of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b). To meet this burden, respondent must show that Mr. Smith intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each year in issue is attributable to fraud. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274. Petitioners concede that there is an underpayment for each of the years *213 in issue; respondent, therefore, has met the burden of proof as to the underpayment of tax for each year. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Estate of Pittard v. Commissioner, 69 T.C. 391 (1977), Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is not to be imputed or presumed, but rather must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, 53 T.C. 96 (1969). Fraud may not be found under "circumstances which at the most create only suspicion." Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950), affg. a Memorandum Opinion of this Court dated Sept. 20, 1949; Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). However, fraud may be proved by circumstantial evidence and reasonable inferences drawn from the facts because direct proof of the taxpayer's *214 intent is rarely available. Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, supra; Stephenson v. Commissioner, 79 T.C. 995 (1982), affd. per curiam 748 F.2d 331 (6th Cir. 1984). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106. The intent to conceal or mislead may be inferred from a pattern of conduct. See Spies v. United States, supra at 499. Courts have relied on several indicia of fraud in considering the fraud addition in tax cases. Although no single factor may necessarily be sufficient to establish fraud, the existence of several indicia may be persuasive circumstantial evidence of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603; Beaver v. Commissioner, supra at 93. *215 Circumstantial evidence which may give rise to a finding of fraudulent intent includes: (1) Understatement of income, (2) inadequate records, (3) failure to file tax returns, (4) implausible or inconsistent explanations of behavior, (5) concealment of assets, (6) failure to cooperate with tax authorities, (7) filing false W-4's, (8) failure to make estimated tax payments, (9) dealing in cash, (10) engaging in illegal activity, and (11) attempting to conceal illegal activity. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601. See Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990), affg. in part, and revg. in part, and remanding an order and decision of this Court entered July 1, 1988. These "badges of fraud" are nonexclusive. Miller v. Commissioner, supra at 334. The taxpayer's background and the context of the events in question may be considered as circumstantial evidence of fraud. United States v. Murdock, 290 U.S. 389, 395 (1933); Spies v. United States, supra at 497; *216 Plunkett v. Commissioner, supra at 303. The record before us provides a basis for finding that the underpayments of tax for 1981, 1982, and 1984 are due to fraud on the part of Mr. Smith. Petitioners have agreed that respondent's use of the net worth and cash expenditures method for reconstructing income resulted in understatements that are substantially correct. Those agreed understatements of taxable income and income tax liability exceeded the amounts reported by strikingly substantial amounts. For the 1981, 1982, and 1984 tax years petitioners' returns reflected about 10, 12, and 31 percent, respectively, of the reconstructed amount of taxable income. For those same years, the amount of tax liability reported was about 4, 3, and 15 percent, respectively, of the amount actually due. Additionally, there was a similar understatement and underpayment with respect to the 1983 return. Accordingly, petitioners' returns for 1981 through 1984 reflect a convincing pattern of repeated and substantial omissions of income. The pattern makes it less likely that such omissions were due to inadvertence. This is especially true here, where the income *217 was potentially from differing sources in each year and not possibly attributable to one source which was routinely inadvertently omitted. In addition to the evidence of substantial and repeated omissions of income, respondent has shown specific items of omitted income. In particular, Mr. Smith invested in T-Bills and stocks and he received interest and dividends, which were not revealed to Ms. Russell and accordingly not included on petitioners' income tax returns. Although Mr. Smith did not report the 1982 dividends to Ms. Russell, he did report the capital loss connected with the 1982 sale of the stock to Ms. Russell in connection with her preparation of petitioners' 1983 tax return. The large disparity between the reported and corrected tax liabilities for the years 1981, 1982, and 1984 corroborates respondent's contention that the books and records of the various business activities were wholly inadequate for the purpose of reporting all of the income generated by the businesses. The existence of the records and Mr. Smith's exclusive control over the businesses reflect that he was aware that the records were necessary and that they were inadequate. This is so because of *218 the credible testimony of the bookkeeper (Ms. Chaney) and the accountant/return preparer (Ms. Russell) who kept complete books and records to the extent the information was available or provided to them. The only possible explanation for the substantial understatements on this record would be Mr. Smith's withholding of information from Ms. Chaney, Ms. Russell, Mrs. Smith, and, ultimately respondent. Mr. Smith's use of cash for his purchases of automobiles throughout the years under consideration is a convincing indicator of his intent to conceal cash that was not deposited in bank accounts to avoid their inclusion in the books and records for tax purposes. During the years under consideration, Mr. Smith purchased about 10 automobiles paying cash for a total cost approximating $ 115,000. In this connection, respondent points out that the special agent's investigation for the 4-year period reflected about $ 500,000 in expenditures when only $ 76,696.93 was reported as adjusted gross income for the same period. Mr. Smith's use of the name "Mack" and a friend's address for his safe deposit and banking transactions in Meridian, Mississippi, takes on some significance in the setting *219 of this case. Petitioners maintained about seven bank accounts in Newton and Union in their given and business names. No plausible explanation was provided for the transactions with the Bank of Meridian in a name different from the name normally used by Mr. Smith. In addition, some portion or all of the transactions in the Meridian bank were not reported on the tax returns. An example of this is the dividends from the National Gypsum stock which was purchased through the Meridian bank. Moreover, Mr. Smith paid the $ 30,298.63 for the stock in three separate $ 10,000 payments and one $ 298.63 payment, all on separate days. There was no reasonable explanation or business purpose for this pattern or mode of payment. Although it was not proven that the cashier's checks used for payment were purchased for cash, the only plausible explanation for the method of payment is that it was intended to avoid the reporting requirements of 31 U.S.C. 5313(a) (1988) for currency transactions exceeding $ 10,000. Prior to the commencement of the criminal investigation, Mr. Smith was not fully candid with respondent's civil auditor in connection with his gambling *220 habits. When inquiry was made about the $ 100,000 withdrawal for the T-Bill, petitioner denied any knowledge of the reason for the withdrawal. The record in this case, however, reflects that Mr. Smith would have known about the $ 100,000 and its purpose. Mr. Smith takes a two-pronged [3] approach with respect to the addition to tax for fraud. He argues that he was not knowledgeable about taxes and that he faithfully provided his accountant/tax return preparer with all the records she requested. In other words, Mr. Smith argues that it was his accountant's incompetence which caused the huge understatements of income. Mr. Smith also argues that if the corporation he formed to operate the beauty salons had been a subchapter S corporation, reported losses were nearly sufficient to neutralize the amount of unreported income on his individual income tax return for 1981 through 1984. Mr. Smith casts blame for the absence of subchapter S status upon the return preparer. *221 First considering Mr. Smith's technical subchapter S argument, it is nothing more than that, a technical argument. It should be noted that this argument ignores the existence of substantial and repeated understatements of income on Mr. Smith's individual returns. Moreover, there is no causal link between the losses in the corporation and the unreported income on the individual returns. Finally, this technical argument is not factually relevant to Mr. Smith's state of mind when the returns in question were filed. On this record, we find Mr. Smith's arguments to be without merit. We did not find Mr. Smith's position or testimony on these points to be credible. During the period 1981 through 1984, Mr. Smith was an entrepreneur regularly expanding his businesses and profit-seeking activities. He controlled the businesses and their finances and, to some extent, the day-to-day activities of the businesses. His contention that the return preparer was incompetent is disingenuous. Mr. Smith was aware that he was required to report his income and that the information would not be reported on the return unless it was presented to the preparer. Mr. Smith stipulated that there were *222 substantial discrepancies [4] between the amounts of income reported and the amounts he should have reported. In the setting of this case, Ms. Chaney and Mrs. Smith did as they were told and supplied what was available to them to Ms. Russell. Ms. Russell relied on the items shown in the records kept by Ms. Chaney and the bank statements provided. Ms. Russell was not the manager of Mr. Smith's businesses; she played a role consisting of return preparation from the information provided. If the information was not provided to her, Ms. Russell could not have reported it. Ms. Russell was not requested to verify any of the information provided by petitioner and there is no apparent reason in this record as to why she should have questioned the information that was provided to her. Only petitioner could have been aware of amounts which were not deposited or provided to Ms. Chaney. We have also considered Mr. Smith's conviction *223 for evading his Federal income tax for 1983. Mr. Smith argues that he is not estopped to deny that his returns for 1981, 1982, and 1984 are not fraudulent. Further, Mr. Smith argues that the failure of the jury to convict him of violating section 7201 with respect to the 1981, 1982, and 1984 tax years should have some bearing on whether respondent is able to show or has shown that he was fraudulent with respect to the years before the Court. There is no doubt that Mr. Smith is free to argue that his returns were not fraudulent, and respondent must prove fraud by clear and convincing evidence with respect to the 1981, 1982, and 1984 tax years. Mr. Smith's conviction for fraud has no conclusive effect upon this case, but it does establish that fraudulent conduct occurred during 1983, a year within a period of years in which Mr. Smith consistently and substantially understated his income for Federal tax purposes. We have also considered that Mr. Smith was not convicted of violating section 7201 for 1981, 1982, and 1984, but we also recognize that the standard of proof in the criminal case is more rigorous than the clear and convincing standard we use to reach our conclusion here. *224 Considering the circumstantial and direct evidence elicited by respondent, we find that respondent has shown by clear and convincing evidence that the entire underpayments for 1981, 1982, and 1984 are due to fraud, and Mr. Smith is liable for additions to tax under section 6653(b) for 1981 and section 6653(b)(1) and (2) for 1982 and 1984. [5]
Innocent Spouse
Mrs. Smith stipulated to the deficiencies in income tax. Also, no additions to tax for fraud were determined with respect to her. When a husband and wife file a joint Federal income tax return, liability for the tax due is joint and several; hence each spouse may be required to pay the entire amount. Sec. 6013(d)(3). Relief is provided under the innocent spouse provisions of section 6013(e). That *225 section states: (e) Spouse Relieved of Liability in Certain Cases. -- (1) In General. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,
then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.
All four statutory requirements must be met for the taxpayer to be afforded relief. Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Estate of Jackson v. Commissioner, 72 T.C. 356, 360 (1979). *226 The burden of proof is on petitioner wife to prove that she satisfies each element of the requirements of section 6013(e)(1). Welch v. Helvering, 290 U.S. 111 (1933); Bokum v. Commissioner, 94 T.C. 126, 138 (1990); affd. 992 F.2d 1132 (11th Cir. 1993). The parties agree that the requirements of section 6013(e)(1)(A) were met. At issue are the requirements under section 6013(e)(1)(B), (C), and (D). Respondent argues that the second requirement for innocent spouse relief has three elements, to wit: (1) A substantial understatement, (2) resulting from grossly erroneous items, and (3) attributable to the noninnocent spouse. Bokum v. Commissioner, supra.Respondent agrees that the first two subelements have been met (substantial understatement resulting from grossly erroneous items), but argues that Mrs. Smith has not shown that the omitted income was entirely attributable to Mr. Smith. With respect to the increases to income attributable to the indirect net worth method, we have difficulty perceiving respondent's position. How would Mrs. Smith show that *227 any portion of it was not attributable to her where no portion of it is specifically attributable to any particular source? With respect to the few specific items, such as the interest on the T-Bills, Mrs. Smith, Bobbie Kay, Ms. Russell, Ms. Chaney, and others have convinced this Court that, other than sales in the Union property stores, Mrs. Smith played no active role in business matters and that she was subservient to Mr. Smith. While some nominal indications of ownership may have been in Mrs. Smith's name, they were in form only and in substance Mrs. Smith had no knowledge or actual control over the business activities or their financial aspects. Mrs. Smith was only in control over the money she had accumulated from teaching, the $ 600 a month draw from the Union stores, and gifts received from her parents. Accordingly, Mrs. Smith has met the second requirement that there be a substantial understatement resulting from grossly erroneous items attributable to the noninnocent spouse. As to the knowledge requirement of section 6013(e)(1)(C), Mrs. Smith must establish that she did not know, and had no reason to know, of the substantial understatement of tax. The test applied to *228 determine whether a spouse had reason to know is whether a reasonably prudent person in the taxpayer's position had reason to know or would be expected to know that the tax liabilities were substantially understated. Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Sanders v. United States, 509 F.2d 162, 167 (5th Cir. 1975). The reason-to-know standard imposes a duty of inquiry on the spouse claiming relief. Stevens v. Commissioner, supra.
Mrs. Smith, other than her sales activity at the Union property stores, was not involved in the numerous businesses of Mr. Smith. She relied upon her husband to handle the business finances and we find her reliance was reasonable. Mrs. Smith was responsible for paying ordinary household expenses and in so doing lived within the constraints of her budget in accord with the portion of Mr. Smith's businesses with which she was somewhat familiar. Although petitioners built a nice residence around 1974-75, Mrs. Smith was generally conservative. She did not buy expensive clothing or *229 jewelry. Most of petitioners' meals were received from Mrs. Smith's parents and for a long period of time petitioners had lived with Mrs. Smith's parents without any cost to petitioners. We found Mrs. Smith's testimony about the purchase of her Mercedes automobile for about $ 22,000 to be credible. In this regard, considering petitioner's cost of living, Mrs. Smith's conservative approach to clothing and household matters, and the gifts regularly received from her parents, we do not find her ability to purchase the Mercedes outside of the realm of the reported income and gift sources. Regarding the purchase of automobiles by Mr. Smith and his propensity to wear jewelry, we do not find that those aspects would have caused Mrs. Smith to be aware of additional income which was unreported on the 1981, 1982, and 1984 joint income tax returns. We note that one of Mr. Smith's businesses was a jewelry and pawn business, which would give him access to jewelry which otherwise would not have been available. The presence of the automobiles would not have, per se, caused Mrs. Smith to be aware of unreported income. In all other respects, petitioners' lifestyle, to the extent that Mrs. Smith *230 was aware, would have been compatible with the reported income, gifts, and her otherwise thrifty or conservative approach to daily necessities. The final element Mrs. Smith must prove is that, under all the facts and circumstances, it is inequitable to hold her liable for the deficiencies attributable to the substantial understatements in tax. Sec. 6013(e)(1)(D). In deciding whether it is inequitable to hold petitioner wife liable for the deficiencies, we take into account whether she significantly benefited, either directly or indirectly, from the items omitted from gross income. Belk v. Commissioner, 93 T.C. 434, 440 (1989); sec. 1.6013-5(b), Income Tax Regs. Normal support is not a significant benefit for purposes of determining whether it is inequitable to hold petitioner liable for a deficiency. Flynn v. Commissioner, 93 T.C. 355, 367 (1989); Terzian v. Commissioner, 72 T.C. 1164, 1172 (1979); sec. 1.6013-5(b), Income Tax Regs.
The circumstances of this case appear stereotypical in terms of the legislative purpose of the relief of innocent spouses. Here, Mrs. Smith, who was raised *231 in an historically traditional environment where wives were subservient to their husbands, took on the same role with respect to Mr. Smith. Mr. Smith dominated his wife and intentionally kept his business matters a secret from his wife. Additionally, Mr. Smith regularly went on trips, for days at a time where he would alternatively, conduct business, and/or gamble, and/or "party", and/or just get away for a few days. Mr. Smith's business activities generally were not revealed to Mrs. Smith. Even the books at the stores at which Mrs. Smith worked were kept by another person (Ms. Chaney). Further, it is clear that when anyone wished information about the businesses, they sought the information from Mr. Smith. Occasionally, Mrs. Smith was chosen to convey information to Ms. Russell, but she was merely a courier in such situations. Mrs. Smith did not personally benefit in any meaningful way from the unreported income for the 1981, 1982, and 1984 tax years. Her home and car were, to some great extent, obtained through her thrift and savings. Additionally, the home was completed substantially before the years under consideration. The poor relationship between Mr. and Mrs. Smith *232 deteriorated into a divorce and subsequent to the 1984 tax year Mr. Smith lost substantial sums of money in business-type transactions, so that Mrs. Smith did not materially benefit from the eventual division of property in the divorce proceeding. She came out with the home and values approximating the value of the property gifted by her parents. Under these circumstances we find it inequitable to hold Mrs. Smith liable for the deficiencies attributable to the substantial understatements in tax for 1981, 1982, and 1984. Accordingly, Mrs. Smith is entitled to innocent spouse relief under section 6013(e). To reflect the foregoing, Decision will be entered for respondent with respect to Mr. Smith and for petitioner, with respect to Mrs. Smith. Footnotes
1. Additions to tax under sec. 6653(b) and sec. 6653(b)(1) and (2)↩ were determined with respect to Bobby M. Smith only.
2. To the extent that sec. 6635(b)(1) is applicable, additional interest equal to 50 percent of the interest on the income deficiency for 1982 and 1984 would be applicable to income tax deficiencies up to $ 61,376.93 and $ 38,062, respectively.↩
1. Petitioner, Bobby M. Smith, also raised an issue, both before and uring trial, concerning whether a Form 870 signed by him and acted upon by respondent was a settlement barring or estopping respondent from arguing here that the addition to tax for fraud applies. This matter was thoroughly addressed by Judge Parker in Smith v. Commissioner, T.C. Memo. 1991-412, and the parties in these consolidated cases were advised by this Division of the Court that Judge Parker's holding would be followed unless it was factually or legally distinguished. After review of the record and briefs in these consolidated cases, we conclude that Judge Parker's holding is squarely on point, should not be disturbed, and will be followed by this Division of the Court in these consolidated cases. Respondent also determined an addition to tax for substantial understatement of tax under sec. 6661 for the 1982 and 1984 taxable years. Sec. 6661 provides a 25-percent addition to tax if there is a substantial understatement of income tax. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown for the taxable year or $ 5,000. An understatement does not include an amount attributable to "the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment". Sec. 6661(b)(2)(B)(i). Additionally, an understatement does not include any item for which there was adequate disclosure. Sec. 6661(b)(2)(B)(ii). Petitioners advanced no arguments concerning sec. 6661 and, accordingly, it is applicable to the extent that the understatements are within the statute's threshold.↩
1. Computational discrepancies are due to rounding in the notices of deficiency.↩
2. The addition to tax for fraud is now contained in sec. 6663.↩
3. Petitioner also makes the point that a jury did not find him guilty of violating sec. 7201 for the 1981, 1982, and 1984 tax years, but recognizes that the Government's burden in a criminal case is measured by a beyond a reasonable doubt standard and respondent's burden regarding the fraud addition is measured by a clear and convincing standard.↩
4. In one instance the unreported portion was about 10 times greater than the amount reported.↩
5. Because we have found that Mr. Smith filed fraudulent returns for each of the taxable years 1981, 1982, and 1984, it is unnecessary to consider petitioner's arguments that the period for assessment has expired for any of those years. See sec. 6501(c)(1).↩