JOSEPH M. MICHAELS AND VICKI R. MICHAELS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Michaels v. Commissioner
Docket No. 45700-86
United States Tax Court
T.C. Memo 1995-294; 1995 Tax Ct. Memo LEXIS 300; 69 T.C.M. (CCH) 3056; June 29, 1995, Filed *300 An appropriate order will be issued, and decision will be entered for respondent in the reduced amount for 1976 and for petitioners in the agreed over-payment amounts for 1979 and 1980. Carleen L. Schreder and Michael von Mandel, for petitioners. Joseph T. Ferrick, for respondent. FAY
FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Year
Deficiency
1976
$ 231,974
1979
11,404
1980
161,867
After concessions, the deficiency for the taxable year 1976 is $ 99,584, and there are overpayments of tax of $ 3,190 and $ 770 for the taxable years 1979 and 1980, respectively. The sole issue to be decided is whether petitioner Vicki R. Michaels [1] *301 is entitled to innocent spouse relief for 1976 pursuant to section 6013(e). [2] Because we find that petitioner has not established that the understatement in tax is attributable to grossly erroneous items and, alternatively, because we find that it would not be inequitable to hold petitioner liable for the understatement, we hold that petitioner is not entitled to innocent spouse relief. FINDINGS OF FACT Petitioners resided in Chicago, Illinois, at the time the petition was filed. Petitioner went to high school and secretarial school in London, England. After graduating from secretarial school, petitioner came to the United States in 1964. She worked primarily as a secretary, first in Los Angeles, California, and later in Chicago, Illinois, until 1974. Petitioner and Mr. Michaels were married in 1970. During the first 4 years of their marriage, until the birth of their daughter in 1974, petitioner continued working as a secretary. Thereafter, petitioner worked as a housewife, mother, and homemaker until 1983. During their marriage, petitioner and Mr. Michaels maintained a joint bank account. Mr. Michaels gave petitioner a monthly allowance, which petitioner used to pay the household bills. Petitioner also maintained a separate account. Until petitioner stopped working, she deposited *302 her secretarial salary into this separate account, and she used it to pay for her own personal expenses. After petitioner stopped working in 1974, petitioner continued to receive a monthly allowance from her husband in an amount that ranged from $ 2,300 to $ 2,700. Petitioner took this monthly check and deposited it into her separate account and used this allowance to pay the household bills. When they were first married, petitioner and Mr. Michaels lived in an apartment for which they paid monthly rent of $ 460. In 1975, Mr. Michaels and petitioner purchased and moved into a cooperative apartment. They paid $ 125,000 for the cooperative apartment. The cooperative dues amounted to approximately $ 600 per month, which petitioner paid out of the allowance Mr. Michaels gave her. Throughout their marriage, petitioners had domestic help. Petitioners lived a comfortable but not extravagant lifestyle. For her 30th birthday in 1976, Mr. Michaels bought petitioner jewelry worth about $ 5,000 to $ 6,000. Mr. Michaels was president of the shipping division of Hyman-Michaels Corporation, a family-owned shipping company. Mr. Michaels also headed the export department of the family-owned scrap *303 steel company. Mr. Michaels operated the family business without input from petitioner. In 1976, Mr. Michaels sold his interests in the family business for nearly $ 1 million. Following the sale of the family business, Mr. Michaels started his own export-import business. Mr. Michaels frequently had to make business trips, and petitioner would accompany him on these trips. Petitioner did not take part in the business dealings of her husband but accompanied him on these trips on a social basis. Mr. Michaels traveled to Asia, Latin America, and Europe on business, taking petitioner with him. Generally, Mr. Michaels and petitioner would take a vacation together at the end of these trips. In 1976, they spent one week in France and one week in Corsica. They spent time together in France again in 1977 and in 1978. Mr. Michaels and petitioner filed joint Federal income tax returns. Mr. Michaels, with the help of a C.P.A., prepared the family Federal income tax returns. Petitioner simply signed the returns, without taking part in filling out the information. In 1976, when Mr. Michaels sold his interests in the family-owned business, petitioners reported a long-term capital gain of $ 761,403 *304 on their 1976 return. On Schedule D of their 1976 return, petitioners reported short-term losses from trading in commodity futures contracts in the amount of $ 445,699. Petitioners also reported ordinary losses from straddle trading in U.S. Treasury Bills in the amount of $ 131,566 on Form 4797 of their 1976 return. By notice of deficiency dated September 29, 1986, respondent determined the deficiencies set forth above, disallowing in full the short-term losses and the ordinary losses claimed on petitioners' 1976 return. The parties reached a settlement prior to trial, agreeing to the following deficiencies and overpayments: (1) $ 99,584 deficiency in the taxable year 1976; (2) $ 3,190 overpayment in the taxable year 1979; and (3) $ 770 overpayment in the taxable year 1980. Of the $ 99,584 deficiency in income tax due with respect to petitioners' 1976 joint income tax return agreed to in the Partial Stipulation of Settled Issues, $ 95,615 is attributable to commodity trading deductions. [3]
*305 Petitioner and Mr. Michaels were separated in 1991. In 1994, when this case was tried, they were in the midst of divorce proceedings. Petitioners' property settlement was not completed at the time of the trial. OPINION If a husband and wife file a joint return, section 6013(d)(3) provides that each spouse becomes jointly and severally liable for the tax due. A spouse, however, may be relieved of such liability if he or she proves entitlement to innocent spouse protection under section 6013(e).[4]Section 6013(e) provides relief if (1) a joint return has been made for the tax year, (2) there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse on the return, (3) the innocent spouse establishes that, in signing the return, he or she did not know or have reason to know of the substantial understatement, and (4) under all the facts and circumstances, it would be inequitable to hold the innocent spouse liable for the deficiency in tax resulting from the substantial understatement. Petitioner has the burden of proving each requirement of section 6013(e). Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); *306 Russo v. Commissioner, 98 T.C. 28, 31-32 (1992). The requirements of section 6013(e) are conjunctive rather than alternative; a failure to prove any one of the requirements precludes an individual from qualifying as an innocent spouse. Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993); Estate of Krock v. Commissioner, 93 T.C. 672, 677 (1989). In the instant case, respondent concedes that a joint return has been filed by petitioner in the years in issue, that a substantial understatement *307 of tax exists which is attributable to Mr. Michaels, and that petitioner did not know, and had no reason to know, of the existence of such substantial understatement.[5] Thus the issues remaining to be decided in the instant case are: (1) Whether the substantial understatement is attributable to grossly erroneous items, and (2) whether it would be inequitable, under all the facts and circumstances, to hold petitioner liable for the deficiency. 1. Grossly Erroneous
Section 6013(e)(2) defines a grossly erroneous item as: (A) any item of gross income attributable to such spouse which is omitted from gross income, and (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law.
In the instant case, the understatement in tax is attributable to deductions disallowed by respondent. Thus petitioner, *308 to qualify for innocent spouse relief, must demonstrate that these claimed loss deductions have no basis in fact or law. A deduction has no basis in fact when the expense for which it is claimed was never, in fact, made. Douglas v. Commissioner86 T.C. 758, 762 (1986). A deduction has no basis in law when the expense, even if made, does not qualify as a deductible expense under well-settled legal principles or when no substantial legal argument can be made in support of its deductibility. Id. "Ordinarily, a deduction having no basis in fact or in law can be described as frivolous, fraudulent, or, to use the word of the committee report, phony." Id. at 763. On their 1976 return, petitioners claimed a deduction for capital losses from straddle trading in commodity futures contracts in the amount of $ 445,699. Additionally, petitioners claimed ordinary loss deductions from straddle trading in United States Treasury Bills in the amount of $ 131,566. Petitioner contends that these deductions have no basis in fact or law since they arise from transactions which are shams, lack economic substance, and lack a profit motive. *309 Petitioner's contentions are based upon statements contained in the statutory notice of deficiency, the report of the revenue agent (RAR) who examined petitioners' returns, and the report of the Appeals officer. Petitioner did not call any witnesses (other than herself) or present any records into evidence at trial. Petitioner first asks us to find the deductions to be grossly erroneous based on statements contained in the statutory notice of deficiency. [6]It is well settled that an individual seeking innocent spouse relief is not entitled to rely on the Commissioner's disallowance of deductions contained in the notice of deficiency to prove that the disallowed deductions have no basis in fact or law, without introducing further evidence. Douglas v. Commissioner, supra at 763. Furthermore, the parties settled the issue of the deductibility of these losses prior to trial, so we cannot determine from the statements contained in the statutory notice of deficiency whether the transactions at issue are shams or not. *310 In the instant case, the issue of whether the commodity straddle losses are properly deductible was settled in a stipulated settlement between the parties. There is no provision in the stipulated settlement that indicates whether or not the losses arose from sham transactions. Nor can we draw any inferences from the settlement to determine whether the deductions at issue were grossly erroneous. While we cannot conclude from the mere fact of a settlement that the deductions were grossly erroneous, we have previously held that the fact that respondent agreed to a compromise settlement may suggest that the deductions in question were less than grossly erroneous. Crowley v. Commissioner, T.C. Memo. 1993-503; Anthony v. Commissioner, T.C. Memo. 1992-133; Neary v. Commissioner, T.C. Memo. 1985-261. In the instant case, we note that, in the stipulated settlement, the parties agreed to reduce the asserted 1976 deficiency from $ 231,974 to $ 99,584. Petitioner also asks us to find, as to the issue of whether the disallowed deductions are grossly erroneous items, facts based on statements appearing *311 in the RAR and the report of the Appeals officer. After reviewing the reports, however, we conclude that the information contained therein is not sufficient to show that the deductions are grossly erroneous. [7] The reports contain a chronological history of Mr. Michaels' purported straddle trading activity. [8] The reports contain transaction dates, transaction amounts, transaction prices, delivery dates, and maturity dates. It appears that, in 1976, Mr. Michaels engaged in several commodity straddle transactions, opening two trading accounts. *312 In October 1976, Mr. Michaels opened an account in which he bought and sold silver future delivery contracts. Mr. Michaels conducted his trading activity in the form of straddle transactions. In November 1976, Mr. Michaels opened another account in which he bought and sold on margin U.S. Treasury Bill call and put options. In both accounts, Mr. Michaels maintained a balanced position. In both accounts, Mr. Michaels incurred large losses in 1976. Petitioner asks us to conclude from the facts contained in these reports that Mr. Michaels' straddle transactions are shams and that, therefore, the losses are grossly erroneous. The mere fact that losses were incurred in commodity straddle transactions does not, without more, show that they are grossly erroneous. We have never held that disallowed loss deductions arising from commodity straddle transactions are by law grossly erroneous. In Crowley v. Commissioner, T.C. Memo. 1993-503, we denied innocent spouse relief where the spouse failed to offer any evidence to prove that the disallowed commodity straddle losses had no basis in fact or law. Similarly, in Russo v. Commissioner, 98 T.C. 28, 33 (1992), *313 we held that loss deductions arising from certain commodity transactions were not grossly erroneous items. In Russo v. Commissioner, we denied innocent spouse relief, in part, because we found that deductions arising from commodity straddle trading were not grossly erroneous items. We found that there was some legal basis for the deductions for two reasons: (1) the commodity straddle transactions giving rise to the deductions were sanctioned initially by several Internal Revenue Service private letter rulings, beginning with the so-called Zinn Ruling in 1974, id. at 32-33; and (2) we had previously held that the commodity straddle losses were not deductible in Glass v. Commissioner, 87 T.C. 1087 (1986), affd. sub nom. Yosha v. Commissioner, 861 F.2d 494 (7th Cir. 1988), because the deductions were not "intended" by the relevant Code sections and were not allowable under the rationale of Gregory v. Helvering, 293 U.S. 465, 469 (1935). Russo v. Commissioner, supra at 33; see also Glass v. Commissioner, supra at 1176-1177. *314 Thus, even though the underlying commodity straddle transaction was an economic sham, we held that the loss deductions were not grossly erroneous since the transaction was originally sanctioned by private letter rulings, and the loss deductions were allowable within the letter of the Code, although not within the spirit of the Code. Accordingly, there was some basis for the deductions. For the same reasons, we cannot conclude that the deductions at issue in the instant case are grossly erroneous items. Petitioner has not proven that there was no basis in law for the deductions. Furthermore, we cannot conclude from the mere description of the commodity straddle trading activity that it is a sham transaction. We have found commodity straddle trading to be a factual sham when the trades actually did not occur or where they were prearranged. See Brown v. Commissioner, 85 T.C. 968, 999-1000 (1985), affd. sub nom. Sochin v. Commissioner, 843 F.2d 351 (9th Cir. 1988). We have also found commodity straddle trading to be a sham when it lacks economic substance. Glass v. Commissioner, supra at 1176. *315 Commodity straddle trading lacks economic substance where it is virtually risk-free or prearranged in order to generate tax losses and not for genuine economic gain. See Katz v. Commissioner, 90 T.C. 1130, 1138 (1988). The presence or absence of risk or profit potential is relevant to whether economic substance exists. Freytag v. Commissioner, 89 T.C. 849, 877-878 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Petitioner has not offered any evidence to show that these transactions did not occur or that they were prearranged. Nor has petitioner demonstrated that these transactions had no profit potential or risk. Thus, petitioner has not established that the commodity straddle transactions are shams or that the deductions are grossly erroneous items. 2. Inequity
For the sake of completeness, we will address petitioner's argument that, given all the facts and circumstances, it would be inequitable to hold her liable for the deficiency attributable to the substantial understatement. Sec. 6013(e)(1)(D); sec. 1.6013-5(b), Income Tax Regs.Section *316 6013(e) as amended no longer requires us to determine whether a spouse significantly benefited from the erroneous item; however, this factor is still considered in determining whether it is inequitable to hold a spouse liable. Purcell v. Commissioner, 86 T.C. 228, 242 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Normal support is not a "significant benefit" for purposes of determining whether denial of innocent spouse relief would be inequitable under section 6013(e)(1)(D). Terzian v. Commissioner, 72 T.C. 1164, 1172 (1979); sec. 1.6013-5(b), Income Tax Regs. Normal support is measured by the circumstances of the taxpayers. See Sanders v. United States, 509 F.2d 162, 168 (5th Cir. 1975). Petitioner bears the burden of proving that she received no significant benefit from the understatements other than normal support, and this burden must be satisfied with specific facts regarding the lifestyle expenditures, asset acquisitions, and dispositions of the benefits of the understatements. Estate of Krock v. Commissioner, 93 T.C. 672, 679 (1989). *317 Petitioner testified that, for her 30th birthday in 1976, Mr. Michaels bought petitioner jewelry worth about $ 5,000 to $ 6,000. Petitioner also testified that she spent one week in France and one week in Corsica in 1976. Under the circumstances herein, this gift, received in the year of the substantial understatement in tax, and the two trips abroad, constitute at least a benefit beyond normal support. Petitioner asserts that it would be inequitable to hold her responsible for the understatement caused by Mr. Michaels' commodity straddle trading. Although Mr. Michaels was responsible for this trading activity, the loss was claimed on their joint return and the decreased tax liability allowed considerably more funds to be available for the household of Mr. Michaels and petitioner. See Resser v. Commissioner, T.C. Memo. 1994-241. We believe that it is not inequitable to hold petitioner liable for the deficiency because she, along with Mr. Michaels, received the joint and several benefits from the loss when it was claimed on their 1976 return. See Smith v. Commissioner, T.C. Memo. 1994-199. In assessing the equity in holding *318 a spouse liable under section 6013(e), we also consider the probable future hardships that would be imposed on the spouse seeking relief if such relief were denied. Sanders v. United States, supra at 171 n.16; Dakil v. United States, 496 F.2d 431, 433 (10th Cir. 1974). Petitioner has offered no evidence that she is without any recourse, nor has she demonstrated that future hardships would be imposed on her as a result of innocent spouse status being denied. See Resser v. Commissioner, supra.Petitioners' property settlement pursuant to their divorce proceedings was not complete as of the date of trial, and it appears that the joint tax liability would be simply one more item to be included in the settlement. Section 6013(e) was enacted to remedy the "grave injustice" created by joint and several liability in some cases. Bokum v. Commissioner, 992 F.2d 1132, 1134 (11th Cir. 1993) (citing S. Rept. 1537, 91st Cong., 2d Sess. 2 (1970)), affg. 94 T.C. 126 (1990). We perceive that no such injustice will occur as a result of our holding. *319 Accordingly, we find that it is not inequitable to hold petitioner liable for the deficiency attributable to the substantial understatement, and she does not meet the requirement of section 6013(e)(1)(D). In summary, we find that petitioner has not established that the understatement is attributable to grossly erroneous items and that it is inequitable to hold her liable for the understatement. We, therefore, hold that petitioner has not met all of the conjunctive requirements of section 6013(e), and she is not entitled to relief as an innocent spouse. For the foregoing reasons, An appropriate order will be issued, and decision will be entered for respondent in the reduced amount for 1976 and for petitioners in the agreed over-payment amounts for 1979 and 1980. Footnotes
1. All references to petitioner will be to Vicki R. Michaels; references to Mr. Michaels will be to Joseph M. Michaels.↩
2. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
3. Petitioner conceded that she is jointly liable for the remaining $ 3,969 of the $ 99,584 deficiency. This $ 3,969 was attributable to the agreed adjustment to their reported deductions for employee business expenses.↩
4. The current "innocent spouse" provisions were enacted as part of the Deficit Reduction Act of 1984 (the Act), Pub. L. 98-369, sec. 424(a). Sec. 424(c) of the Act rendered the amendments to sec. 6013(e) applicable to all taxable years to which the Internal Revenue Code of 1954 applied. Therefore, sec. 6013(e)↩, as currently enacted, governs the tax years at issue in the instant proceeding.
5. Respondent also conceded that the understatement exceeded the applicable percentage of petitioner's preadjustment year gross income pursuant to sec. 6013(e)(4)↩.
6. The statutory notice of deficiency explains the disallowance of the loss deductions as follows: It is determined that the gains and losses reported on your 1976, 1977, 1978, 1979 and 1980 tax returns with respect to commodity, option, and financial obligation spread ("straddle") transactions cannot be recognized because you have not established that the gains and losses occurred or occurred in the manner claimed. The transactions at issue were either shams, or devoid of the substance necessary for recognition for Federal income tax purposes. No genuine losses occurred. Additionally, the claimed losses for 1976, 1977, 1978, 1979 and 1980 are disallowed in the years claimed because of the lack of any profit motive for the commodity spread transactions.↩
7. Respondent filed motions in limine to exclude the report of the appeals officer, the report of the revenue agent, and the testimony of the revenue agent from being admitted into evidence. Said motions will be denied.↩
8. In addition, the reports contain the revenue agent's and the appeals officer's legal conclusions as to the proper tax treatment of these transactions. We disregard the legal conclusions, since they are not binding upon this Court, particularly since the legal arguments were based on Rev. Rul. 77-185, 1977-1 C.B. 48, which we found inapplicable in Smith v. Commissioner, 78 T.C. 350, 388↩ (1982).