ALAN M. RESSER AND MELINDA B. RESSER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Resser v. Commissioner
Docket No. 18606-88
United States Tax Court
T.C. Memo 1994-241; 1994 Tax Ct. Memo LEXIS 236; 67 T.C.M. (CCH) 3025; May 26, 1994, Filed *236 For petitioners: Alan F. Segal. For respondent: Joseph T. Ferrick. WRIGHT
WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for taxable year 1982 in the amount of $ 391,113, and an addition to tax under section 6661 [1] in the amount of $ 97,778.50. Respondent also determined that petitioners are liable for an increased rate of interest pursuant to section 6621(c) due to a substantial underpayment attributable to a tax-motivated transaction. In Resser v. Commissioner, T.C. Memo. 1991-423 (Resser I), we held that petitioners were liable for the deficiency, addition to tax, and increased interest as determined by respondent. Prior to trial, petitioner Melinda B. Resser filed a Motion to Sever Issue of Innocent Spouse. We granted the motion and a separate trial was held in Chicago, *237 Illinois, on the sole issue of whether petitioner Melinda B. Resser qualifies for relief under the innocent spouse provisions of section 6013(e). For the reasons that follow, we find that petitioner Melinda B. Resser is not entitled to innocent spouse relief. FINDINGS OF FACT Some facts of this case are set out in detail in Resser I and may be repeated here for purposes of convenience. Additional facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein. Petitioners resided in Highland Park, Illinois, at the time the petition was filed. All references to petitioner in the singular are to Melinda B. Resser. Petitioners filed a joint Federal income tax return for taxable year 1982. The return contained a substantial understatement of tax attributable to petitioner Alan M. Resser. Petitioners were married on October 13, 1963. In 1974, they purchased a home in Highland Park, Illinois, in which they resided, together with their two daughters, during taxable year 1982. The home was purchased for cash without the use of a mortgage; however, during 1982 petitioners borrowed $ 250,000 using their home as collateral. *238 The loan was for use in Mr. Resser's business. In April 1980, Mr. Resser left petitioner and served her with divorce papers. Subsequently, Mr. Resser withdrew the divorce papers and returned home to petitioner. On October 28, 1988, Mr. Resser left petitioner again and withdrew all of the cash from their savings account. Petitioners have since maintained separate residences, and a divorce proceeding is currently pending. No marital dissolution or property settlement has been finalized. Mr. Resser earned a bachelor of science degree in finance from the University of Illinois. Petitioner also attended the University of Illinois. She majored in math and rhetoric, completed a premedical course of study, and ultimately earned a bachelor of science degree in English. Additionally, in 1967, petitioner earned a master's degree in medical communications from the Illinois Institute of Technology. During 1969, petitioner quit her first job as a medical writer at Baxter Travenol in order to raise her children. Two years later, Mr. Resser was diagnosed as having bipolar depression; i.e., manic depression. In 1978, petitioner returned to work on a volunteer basis at Highland Park Hospital, *239 and in 1979, she was offered a position as a part-time consultant. In 1980, Mr. Resser returned to a depressed state and began to exhibit unusual behavior. The partners in Mr. Resser's business notified petitioner that Mr. Resser's performance at work was inadequate and that they would be forced to terminate their partnership. At this time, petitioner began to work full time at the hospital. During 1982, petitioner earned wages in the amount of $ 14,655. In November 1983, petitioner became the director of marketing for Care Communications, Inc., at a salary of $ 26,000. Petitioner continued in that position until October 1991, at which time she was earning $ 60,000 annually. Currently, petitioner is employed as marketing director of a different firm at a salary of $ 55,000, plus a commission or bonus estimated to be approximately $ 20,000. Mr. Resser was a member of the Chicago Board Options Exchange (CBOE), a registered national securities exchange. During taxable year 1982, Mr. Resser made stock option trades in two accounts, account AMR and account QRF. Only transactions in account QRF are at issue in this case. Account QRF was a joint account registered in the name *240 of Mr. Resser and Rialcor Securities Corp. (Rialcor), the CBOE member firm of which he was a one-third owner and through which he cleared all his trading activity. Pursuant to an oral agreement, Mr. Resser received 90 percent of the profits and losses realized in the QRF account. For taxable year 1982, account QRF incurred $ 893,706 in losses. Mr. Resser's share of the $ 893,706 loss (90 percent) equaled $ 804,335, which petitioners used to reduce their taxable income to $ 3,526. In Resser I, we found that the losses were not deductible under section 165 because Mr. Resser lacked the requisite profit motive when he engaged in the transactions. Consequently, we held that petitioners are liable for a deficiency in the amount of $ 391,113, an addition to tax under section 6661 in the amount of $ 97,778.50, and increased interest under section 6621. At the time of trial, Mr. Resser was unemployed due to complications with his health. He was receiving $ 4,500 monthly from disability income insurance. Petitioner did not participate in the management or day-to-day operations of Mr. Resser's business. During the first 17 years of their marriage, petitioner paid all of the household *241 expenses. Mr. Resser assumed control of the family finances when he recovered from his depression in 1980. The tax returns were prepared each year by an accountant who was also a social acquaintance of the Ressers. Petitioner's involvement with the preparation of the 1982 Federal joint income tax return consisted of gathering Forms W-2, Forms 1099, and any other relevant tax information which was delivered to the house and presenting it to the accountant. When the return was completed, the accountant instructed petitioner to "sign where the red X was." Petitioner neither reviewed the return nor discussed it with the accountant. OPINION A husband and wife who file a joint return are jointly and severally liable for the tax due. Sec. 6013(d)(3). An "innocent" spouse, however, is relieved of liability if he or she proves the following: (1) That a joint return has been made for a taxable year; (2) that on such return there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) that he or she did not know, and had no reason to know, of such substantial understatement when he or she signed the return; and (4) that after consideration *242 of all the facts and circumstances, it would be inequitable to hold him or her liable for the deficiency in income tax attributable to such substantial understatement. Sec. 6013(e)(1), [2] as amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802; Purcell v. Commissioner, 86 T.C. 228, 235 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Petitioner bears the burden of establishing that each of the four requirements of section 6013(e) has been satisfied. Purcell v. Commissioner, 826 F.2d at 473; Sonnenborn v. Commissioner, 57 T.C. 373, 381-383 (1971). The requirements of section 6013(e) are conjunctive rather than alternative; a failure to meet any of the requirements prevents a spouse *243 from qualifying for relief under section 6013(e). Cohen v. Commissioner, T.C. Memo. 1987-537; Estate of Killian v. Commissioner, T.C. Memo. 1987-365; Levin v. Commissioner, T.C. Memo. 1987-67. The parties agree that petitioner and Mr. Resser filed a joint return for taxable year 1982. The parties also agree and we find that there is a substantial understatement of tax attributable to Mr. Resser for the year in issue. The remaining requirements of section 6013(e), however, are disputed. Because we find that petitioner knew or had reason to know of the substantial understatement, and that it is not inequitable to hold petitioner liable for the deficiency for taxable year 1982, we do not address whether the understatement resulted from a grossly erroneous item. Section 6013(e)(1)(C) -- Knowledge or Reason To Know
Petitioner must prove that in signing the returns she did not know, and had no reason to know, of Mr. Resser's substantial understatement. The requisite knowledge is knowledge of the item itself, rather than knowledge of the tax consequences of the item. Quinn v Commissioner, 524 F.2d 617, 626 (7th Cir. 1975), *244 affg. 62 T.C. 223 (1974). Mr. Resser testified that he discussed his trading practices and methods of deferring taxes with petitioner and therefore petitioner was aware of the transactions which resulted in the losses at issue in Resser I. The record indicates, however, that petitioner did not participate in the management or day-to-day operations of Mr. Resser's business. Based on this record, we conclude that petitioner did not know of the transactions producing the understatement. Therefore, the only question is whether she had reason to know of the facts giving rise to the substantial understatement. The standard to be applied in determining whether a taxpayer "had reason to know" is whether a reasonably prudent person under the circumstances of the person claiming innocent spouse relief could be expected to know at the time of signing the return that the tax liability was erroneous or that further investigation was warranted. Shea v. Commissioner, 780 F.2d 561, 566 (6th Cir. 1986), affg. in part, revg. in part and remanding T.C. Memo. 1984-310; Sanders v. United States, 509 F.2d 162, 166-167 (5th Cir. 1975); *245 Bokum v. Commissioner, 94 T.C. 126, 148 (1990), affd. 992 F.2d 1132 (11th Cir. 1993); Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979); see McRae v. Commissioner, T.C. Memo. 1988-374 (same standard used in cases involving deductions as in cases of omitted income). In determining whether the relief-seeking spouse had reason to know of the substantial understatement of tax, courts consider the following factors: (1) The relief-seeking spouse's level of education; (2) his or her involvement in the financial and business activities of the family; (3) any substantial unexplained increase in the family's standard of living; and (4) the culpable spouse's evasiveness and deceit about the family's finances. Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989), revg. an Oral Opinion of this Court. Nevertheless, the test is a subjective one and no single factor or set of factors is dispositive. See Guth v. Commissioner, 897 F.2d 441, 444 (9th Cir. 1990), affg. T.C. Memo. 1987-522. *246 We do not determine whether the relief-seeking spouse had reason to know of the substantial understatement of tax by counting the number of factors tending to cut in the taxpayer's favor. Sanders v. United States, supra; see also Silverman v. Commissioner, T.C. Memo. 1994-153; Pappadio v. Commissioner, T.C. Memo. 1992-568. The issue is a factual question to be determined after a review of the entire record. Guth v. Commissioner, supra at 443-444; Park v. Commissioner, T.C. Memo. 1993-252. With respect to the instant case, we believe that the amounts reported on the joint return were of such a nature that they would have alerted petitioner to the fact that there was an understatement of tax. Cf. Cohen v. Commissioner, supra; Levin v. Commissioner, supra.The 1982 joint tax return reported wage income and interest income of approximately $ 300,000, yet taxable income was merely $ 3,526, and petitioners paid no tax for the year. Although petitioner *247 did not review the returns, she was responsible for gathering Forms W-2 and Forms 1099 and thus should have been aware of the amounts reported thereon. We believe that a person of normal intelligence would know that the negligible taxable income reported on petitioners' return was insufficient to support their lifestyle. See Shapiro v. Commissioner, T.C. Memo. 1986-142. Petitioner is an intelligent, mature, and well-educated woman. While Mr. Resser controlled the family finances during 1982, petitioner was experienced as the family check writer, and she was cognizant of the amount of income necessary to support the household. In fact, petitioner testified that she knew her income during taxable year 1982 was insufficient to support the household. We believe that a reasonably prudent person, with petitioner's knowledge of the family finances, would have reason to know of the understatement. See Estate of Jackson v. Commissioner, 72 T.C. 356, 361 (1979); Hammond v. Commissioner, T.C. Memo. 1990-22, affd. 938 F.2d 185 (8th Cir. 1991). Further, the reason to *248 know test establishes a duty of inquiry on the part of the spouse claiming relief under section 6013(e). Shea v. Commissioner, supra at 565. "She cannot obtain the benefits of section 6013(e) by simply turning a blind eye to -- by preferring not to know of -- facts fully disclosed on a tax return, of such a numerical magnitude as would reasonably put her on notice that further inquiry would need to be made." Bokum v. Commissioner, 94 T.C. at 148; Levin v. Commissioner, supra.Petitioner testified that because Mr. Resser's business was extremely volatile, she preferred not to know what Mr. Resser did on a daily basis. Petitioner further testified that as a result of the nature of Mr. Resser's business, she was uncertain about their financial position, and therefore did not review the returns because the numbers did not mean anything to her. Mr. Resser did not conceal the returns from petitioner or prevent her in any way from reviewing them. In fact, the record reveals that petitioner's failure to review the returns was of her own volition. We believe that petitioner failed to *249 satisfy her duty of inquiry. Regardless of whether Mr. Resser showed petitioner the specific entry on the tax return for the losses pertaining to the QRF account, she signed the return under penalty of perjury. Petitioner was a college graduate and should have realized her responsibility for reviewing the return she signed. Terzian v. Commissioner, supra at 1171-1172; Cohen v. Commissioner, T.C. Memo. 1987-537. Petitioner has introduced no evidence that she was prevented from ascertaining the facts about any item on the return she signed. We find that a reasonable person under petitioner's circumstances at the time she signed the return should have taken the time or effort to inquire about the discrepancy between gross income and taxable income. Shea v. Commissioner, supra at 566; Sanders v. United States, supra; Terzian v. Commissioner, supra at 1170. Section 6013(e) is designed to protect the innocent, not the intentionally ignorant. Cohen v. Commissioner, supra; Dickey v. Commissioner, T.C. Memo. 1985-478. *250 Thus, even though petitioner had no business background, we do not think that her failure to inquire was reasonable. See Clevenger v. Commissioner, 826 F.2d 1379 (4th Cir. 1987), affg. T.C. Memo. 1986-149. Accordingly, we find that petitioner had reason to know of the understatement when she signed the return; thus she does not meet the requirement of section 6013(e)(1)(C). Section 6013(e)(1)(D) -- Inequitable
The final requirement for innocent spouse relief is that, given all the facts and circumstances, it would be inequitable to hold the spouse seeking relief liable for the deficiency attributable to the substantial understatement. Sec. 6013(e)(1)(D); sec. 1.6013-5(b), Income Tax Regs. Section 6013(e) as amended no longer requires us to determine whether a spouse significantly benefited from the erroneous item; however, this factor is still considered in determining whether it is inequitable to hold a spouse liable. Purcell v. Commissioner, 86 T.C. at 242; Johnson v. Commissioner, T.C. Memo. 1993-227. Normal support is not a "significant benefit" *251 for purposes of determining whether denial of innocent spouse relief would be inequitable under section 6013(e)(1)(D). Terzian v. Commissioner, 72 T.C. at 1172; sec. 1.6013-5(b), Income Tax Regs. Normal support is measured by the circumstances of the taxpayers. See Sanders v. United States, 509 F.2d at 168. Petitioner bears the burden of proving that she received no significant benefit from the understatements other than normal support, and this burden must be satisfied with specific facts regarding the lifestyle expenditures, asset acquisitions, and dispositions of the benefits of the understatements. Estate of Krock v. Commissioner, 93 T.C. 672 (1989). Petitioner asserts that it would be inequitable to hold her responsible for the understatement caused by Mr. Resser's trading in the QRF account. Although Mr. Resser was responsible for the QRF account, the loss was claimed on their joint return and the decreased tax liability allowed more funds to be available for the household of Mr. Resser and petitioner. Petitioner has not suggested that Mr. Resser concealed from her the tax savings *252 resulting from the QRF losses. In fact, petitioner testified that Mr. Resser never put limits on the amount of money she could spend. The record reveals that petitioners lived a very expensive lifestyle, which included frequent vacations and social activities. Mr. Resser stated that their living expenses were approximately $ 21,000 each month. Further, while Mr. Resser withdrew all the cash from petitioners' savings account in 1988, 6 years after the understatement, there is no evidence that the funds comprised the 1982 tax savings. Based on the record before us, we believe that the funds comprised Mr. Resser's income from taxable year 1987, approximately $ 1.4 million. Further, we believe that it is not inequitable to hold petitioner liable for the deficiency because she, along with Mr. Resser, received the joint and several benefits from the loss when it was claimed on their 1982 tax return. Cf. Smith v. Commissioner, T.C. Memo. 1994-199; Cohen v. Commissioner, supra. Petitioner is not the only party before the Court on this matter of liability for the deficiency; petitioner has not shown that she has no *253 right of contribution against Mr. Resser for his share of the joint and several liability. For that matter, the Ressers' property settlement was not complete as of the date of trial, and the joint tax liability would be simply one more item to be included if the settlement is not yet complete. Petitioner has offered no evidence that she is without any such recourse. Section 6013(e) was enacted to remedy the "grave injustice" created by joint and several liability in some cases. Bokum v. Commissioner, 992 F.2d at 1134 (citing S. Rept. 91-1537, at 2 (1970)). We perceive that no such injustice has occurred as a result of our holding. Accordingly, we find that it is not inequitable to hold petitioner liable for the deficiency attributable to the substantial understatement, and she does not meet the requirement of section 6013(e)(1)(D). In summary, we find that petitioner had reason to know of the facts of the understatement, and that it is not inequitable to hold her liable for the understatement. We therefore hold that petitioner has not met all of the conjunctive requirements of section 6013(e), and she is not entitled to relief as an innocent spouse. *254 To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect during the year in issue.↩
2. The Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802, amended sec. 6013(e) retroactively to all years to which the Internal Revenue Code of 1954 applies.↩