T.C. Memo. 2013-186

UNITED STATES TAX COURT

JAMES DOUGLAS KELLAM, Petitioner, AND DAWN Y. GRIFFIN, Intervenor
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6503-11.                     Filed August 15, 2013.

James Douglas Kellam, pro se.

Lauren N. May, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  This case is before the Court on a petition disputing a notice of deficiency and a final determination denying petitioner's request from joint and several liability relief under section 6015(b), (c), or (f).[1]

---

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[*2]** The parties settled many of the issues, and the remaining issues are: (1) whether petitioner is entitled to relief from joint and several liability under section 6015(b), (c), or (f) for understatements of tax for the tax years 2007 and 2008, and (2) whether petitioner is liable for an accuracy-related penalty under section 6662(a) for 2007.

FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulations of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Illinois when he petitioned the Court.

Petitioner and Ms. Griffin timely filed joint returns for the 2007 and 2008 tax years. Petitioner and Ms. Griffin had an unusual banking situation before their November 24, 2009, divorce. Petitioner and Ms. Griffin shared a bank account, but petitioner was not listed as an account holder; instead, petitioner was an authorized user and the bank issued him a debit card associated with the account. Petitioner deposited money into the account and could view the account balance, but he could not write checks on the account.

---

[1](...continued)
Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** Ms. Griffin and petitioner were still married and living together when Ms. Griffin prepared their Federal tax return for 2007. Petitioner was present when Ms. Griffin prepared the 2007 return. Ms. Griffin claimed the following erroneous deductions: $973 for cash charitable contributions; $19,410 for two cars they had given her children as noncash charitable contributions;[2] $19,633 for unreimbursed employee expenses; $40 for tax preparation fees; $281 for student loan interest payments; and $2,626 for safe deposit box rental expenses. Also, Ms. Griffin did not report an $80 State income tax refund on their 2007 joint return. Ms. Griffin asked petitioner whether he wanted to review the return before filing, but petitioner chose not to review the return before it was electronically signed and filed on February 8, 2008. Petitioner and Ms. Griffin shared the $7,067 refund for the 2007 tax year.

Petitioner and Ms. Griffin separated and began living in different residences in November 2008. Ms. Griffin prepared the 2008 joint return for herself and petitioner. For the 2008 return, however, petitioner was not present for the preparation and was not given an opportunity to review the return before filing. Instead, petitioner supplied his income information to Ms. Griffin, who

---

[2]Although Ms. Griffin's explanation described the gift as a "non-charitable donation", the mistake in law would disqualify the donation.

[*4] independently prepared the return. Ms. Griffin then electronically filed the return without consulting petitioner. Further, Ms Griffin did not provide petitioner a copy of the joint return until two weeks after she filed it. On the 2008 Federal tax return, Ms. Griffin claimed the following erroneous deductions: $7,350 for cash charitable contributions; $7,773 for unreimbursed employee expenses; and $50 for tax preparation fees. In addition, Ms. Griffin did not report a $592 State income tax refund on the joint return for tax year 2008. On the basis of the information provided on their 2008 Federal tax return, petitioner and Ms. Griffin received a refund of $2,474.

After petitioner's 2008 Federal income tax return was filed, but before the refund was received, the Illinois Department of Revenue sought additional tax from Ms. Griffin and petitioner. Ms. Griffin received the Federal tax refund of $2,474 and told petitioner she was withholding a portion of his share to pay the State tax. As a result of Ms. Griffin's actions, petitioner received only approximately one-third of the 2008 Federal tax refund.

Respondent initiated an audit for petitioner's 2007 and 2008 taxable years on January 28, 2010. During the audit petitioner filed Form 8857, Request for Innocent Spouse Relief. On January 24, 2011, respondent issued a statutory notice of deficiency determining an accuracy-related penalty for 2007. The notice of

[*5] deficiency disallowed all the deductions described above and adjusted petitioner's tax liabilities for the unreported income. The notice of deficiency also was accompanied by a final determination denying petitioner's request for relief from joint and several liability for 2007 and 2008. On March 17, 2011, petitioner timely petitioned the Court for redetermination of the deficiencies and for review of the final determination. Ms. Griffin filed a notice of intervention on August 8, 2011. The Court dismissed Ms. Griffin as intervenor for lack of prosecution on December 3, 2012.

OPINION

Petitioner asks the Court to redetermine the deficiencies and to review respondent's final determination denying his request for relief from joint and several liability for 2007 and 2008. Under section 6013(d)(3), a husband and wife filing a joint return are jointly and severally liable for all tax for the taxable year, including interest. Petitioner claims that he is entitled to relief under section 6015 from the tax liabilities reflected on the notice of deficiency, dated January 24, 2011, for tax years 2007 and 2008. Except as otherwise provided in section 6015, the spouse requesting relief generally bears the burden of proof. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004).

[*6]   Section 6015 relieves a spouse of joint and several liability in three situations: (1) if the spouse, inter alia, did not know or have reason to know of a tax understatement attributable to the nonrequesting spouse when the return was signed; (2) if a divorced or separated spouse seeks to limit individual liability to the portion of the deficiency allocable to him or her; and (3) in the case of a deficiency or any unpaid tax, if it is inequitable to hold the spouse liable for the tax and if relief is unavailable to the taxpayer under the other two provisions. See sec. 6015(b), (c), (f).

I. Relief Under Section 6015(b)

Under section 6015(b), a taxpayer seeking relief from joint and several liability must meet five conditions: (1) a joint return was filed for the taxable year; (2) there is an understatement of tax attributable to an erroneous item of the taxpayer's spouse; (3) the taxpayer establishes that in signing the return he or she did not know, and had no reason to know, of the understatement; (4) it is inequitable to hold the taxpayer liable for the deficiency attributable to the understatement; and (5) the taxpayer timely elects the benefits of section 6015(b). A taxpayer must satisfy all five requirements to qualify for relief. See Alt v. Commissioner, 119 T.C. at 313.

**[*7]** Petitioner filed joint returns and timely elected relief under section 6015(b)(1)(A) and (E). Accordingly, petitioner bears the burden to show: there is an understatement of tax attributable to an erroneous item of Ms. Griffin; in signing the return he did not know, and had no reason to know, of the understatement; and it is inequitable to hold him liable for the deficiency attributable to the understatement. See id.

A. Section 6015(b)(1)(C)

For convenience section 6015(b)(1)(C) will be analyzed first. Under section 6015(b)(1)(C) a requesting spouse must show he or she did not know and had no reason to know that there was an understatement of tax at the time he or she signed the return. For deductions, a taxpayer has reason to know of an understatement if at the time the taxpayer signed the return the taxpayer had enough knowledge of the facts underlying the claimed deductions that it would have caused a reasonably prudent taxpayer in the taxpayer's position to question the legitimacy of the deductions. Resser v. Commissioner, 74 F.3d 1528, 1536 (7th Cir. 1996), rev'g T.C. Memo. 1994-241. For unreported income, a spouse has reason to know of the understatement if a "reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the * * * understatement." Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989);

[*8] Quinn v. Commissioner, 524 F.2d 617, 626 (7th Cir. 1975), aff'g 62 T.C. 223 (1974); see also sec. 1.6015-2(c), Income Tax Regs.

Several factors are relevant to whether a taxpayer had reason to know of the understatement, including his or her level of education; involvement in the financial and business activities of the family; any substantial unexplained increases in the family's standard of living; and the culpable spouse's evasiveness and deceit about the family's finances. Resser v. Commissioner, 74 F.3d at 1536. None of the factors is controlling or given more weight than another; the factors shall be weighed as a whole.

At the time Ms. Griffin was preparing the tax returns for tax years 2007 and 2008, petitioner was a high school graduate studying for a college degree--which he later earned. Considering the level of petitioner's education, this factor weighs in favor of denying relief for both the 2007 and 2008 tax years.

Petitioner lived with Ms. Griffin throughout the 2007 tax year and knew enough about the family finances that he should have questioned the legitimacy of the large expenses' qualifying as deductions. Petitioner knew the family had previously purchased two automobiles and that they had been given to Ms. Griffin's children. Petitioner's knowledge of the $10,420 and $8,350 transactions

**[*9]** for the cars shows that he was aware of major family expenses.[3] His knowledge of major family expenses should have led him to question the unreimbursed employee expenses of $19,633 and at the very least to question the expenses associated with his employment.[4] Petitioner also shows he was involved with the family's finances because he deposited and withdrew money from the shared account. Further, petitioner directly acknowledged that he would have questioned Ms. Griffin about the deduction if he had looked at the return before it was filed. Accordingly, this factor weighs in favor of denying relief.

No evidence was presented showing Ms. Griffin was deceptive or evasive about family finances for the 2007 tax year. In fact Ms. Griffin prepared the 2007 return in petitioner's presence and asked him directly whether he would like to review the return before filing, but he declined. Petitioner cannot avoid liability by actively electing to be uninformed about the contents of his Federal tax return, especially when he was specifically asked to review it. This factor weighs in favor of denying relief.

---

[3]The cost of the automobiles makes up most of the noncash charitable contribution deduction that respondent denied for the 2007 tax year.

[4]Ms. Griffin reported $14,143 of unreimbursed employee expenses for herself and $5,490 for petitioner for the 2007 tax year.

**[*10]** No evidence was presented about substantial unexplained increases in the family's standard of living, and it is therefore a neutral factor for both the 2007 and 2008 tax years.

Petitioner had enough knowledge of the facts underlying the claimed 2007 deductions that it would have caused a reasonably prudent taxpayer in his position to question their legitimacy. Accordingly, petitioner had reason to know of the understatement of tax that resulted from the deductions claimed for the 2007 tax year, and he is not entitled to relief from joint and several liability under section 6015(b) for the understatement attributable to those expenses.

Petitioner had reason to know of the State income tax refunds for both the 2007 and 2008 tax years. As noted above, for unreported income a spouse has reason to know of an understatement of tax if a reasonably prudent taxpayer could be expected to know that the return contained the understatement when he or she signed the return. See sec. 1.6015-2(c), Income Tax Regs. Petitioner had reason to know of the understatement because he and Ms. Griffin had previously received a refund from the State of Illinois. He cannot avoid liability by choosing not to acknowledge the refund. Accordingly, petitioner is not entitled to relief from joint and several liability for the understatements of tax attributable to the unreported

**[\*11]** State income tax refunds received in tax years 2007 and 2008 under section 6015(b) because he had reason to know of the income.

Petitioner's situation drastically changed during the 2008 tax year, and he did not know, and did not have reason to know, of the understatement of tax for that year. During the 2008 tax year petitioner separated from Ms. Griffin and she moved out of the marital home. Petitioner did not show the same level of involvement with the family finances in 2008, and Ms. Griffin opened a new bank account in early 2009 for which petitioner was neither an account holder nor an authorized user. All of the 2008 Federal tax refund went directly into Ms. Griffin's account, and petitioner received only a small portion of the refund from Ms. Griffin. This factor weighs in favor of relief.

Ms. Griffin did not deny petitioner access to the bank records, but she was evasive when she filed the joint Federal tax return without his review and did not provide him a copy until two weeks after she had filed it. Petitioner's only involvement in preparing the 2008 tax return was giving Ms. Griffin his Forms W-2, Wage and Tax Statement. After receiving his Forms W-2 Ms. Griffin prepared and filed the joint return without any other input from petitioner. Unlike the 2007 tax return, Ms. Griffin did not offer petitioner a chance to review the 2008 return

**[*12]** before she filed it, and petitioner did not receive a copy of the return until two weeks after Ms. Griffin filed it. This factor weighs in favor of relief.

Together, the facts indicate that petitioner did not know or have reason to know of the understatement of tax from erroneous deductions claimed for the 2008 tax year. Accordingly, petitioner satisfies section 6015(b)(1)(C) with respect to the erroneous deductions claimed for the 2008 tax year.

B. Section 6015(b)(1)(B)

A taxpayer must show that the understatement of tax is attributable to erroneous items of the nonrequesting spouse under section 6015(b)(1)(B). Generally an erroneous item is attributed to the individual whose activities gave rise to the item. Sec. 1.6015-1(f)(1), Income Tax Regs. In deciding who is attributed erroneous items, the Court has attributed items to the spouse who wrongfully reported or claimed the item (with certain exceptions not applicable here). See Dillon v. Commissioner, T.C. Memo. 1998-5; Estate of Killian v. Commissioner, T.C. Memo. 1987-365.[5] The facts in the record demonstrate that

---

[5]Although these cases arose under former sec. 6013(e), the Court has determined that cases interpreting similar terms under sec. 6013(e) remain instructive in its analysis in cases under sec. 6015(b)(1). See Alt v. Commissioner, 119 T.C. 306, 314 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004); Juell v. Commissioner, T.C. Memo. 2007-219; Becherer v. Commissioner, T.C. Memo. 2004-282. The terms "attributable to an item of the individual with
(continued...)

[*13] the deductions for the 2008 tax year are solely attributable to Ms. Griffin.

Ms. Griffin independently prepared the 2008 tax return, she was in control of all

the documents needed to file the return, and she claimed the deductions of her own

accord. Petitioner truthfully testified that he would not have claimed the

deductions. Accordingly, petitioner satisfies the section 6015(b)(1)(B)

requirement for the erroneous deductions because the erroneous deductions

claimed on his 2008 tax return are all attributable to Ms. Griffin.[6]

C. Section 6015(b)(1)(D)

Under section 6015(b)(1)(D) the requesting spouse must prove that it is

inequitable to hold him liable for the understatement taking into account all the

facts and circumstances. The most often considered factors are whether there has

been a significant benefit to the spouse claiming relief and whether the failure to

_____

[5](...continued)
whom the requesting spouse filed the joint return ('the nonrequesting spouse')" of
Rev. Proc. 2003-61, sec. 4.01(7), 2003-2 C.B. 296, 297, is similar to the terms
"attributable to grossly erroneous items of one spouse" of sec. 6013(e). The
analysis for attributing items to one spouse or the other is essentially the same.

[6]The State income tax refund for tax year 2008, however, is not attributable
solely to Ms. Griffin. Petitioner did not testify or otherwise provide evidence
showing that the State income tax refund is solely attributable to Ms. Griffin.
Accordingly, even if petitioner did not have reason to know of the State income
tax refund under section 6015(b)(1)(C), he would be precluded from relief because
the item is partially attributable to him.

**[*14]** report the correct tax liability on the joint return results from concealment, overreaching, or any other wrongdoing on the part of the nonrequesting spouse. See Alt v. Commissioner, 119 T.C. at 314.

Only the portion of the understatement of tax resulting from the 2008 erroneous deductions is reviewed under this section because it is the only part of the understatement that meets the requirements of section 6015(b) discussed above. Petitioner did not significantly benefit because he received only a part of the Federal income tax refund for the 2008 tax year. Ms. Griffin withheld most of petitioner's share, presumably to pay a State tax deficiency. The record does not clearly establish that petitioner's share was actually used on his behalf. Instead, petitioner was denied the opportunity to choose how to use his portion of the refund, and he did not significantly benefit from the understatement. Further, normal support is not considered a significant benefit, and there is no evidence that petitioner received anything beyond normal support. See Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993) (citing Flynn v. Commissioner, 93 T.C. 355, 367 (1989)), aff'g T.C. Memo. 1992-228.

In addition, Ms. Griffin overreached when she excluded petitioner from participating in the 2008 Federal tax return preparation. Ms. Griffin's wrongdoing stemmed from denying petitioner the opportunity to review the tax return and

[*15] delaying giving him a copy of the return. These actions show that she overreached and possibly concealed information from petitioner. Accordingly, petitioner satisfies section 6015(b)(1)(D) because he did not significantly benefit and Ms. Griffin overreached when filing the 2008 tax return.

In sum, under section 6015(b), petitioner is relieved of joint and several liability for the understatement of tax attributable to the erroneous deductions Ms. Griffin claimed for the 2008 tax year but remains jointly liable for the understatement of tax attributable to the unreported State income tax refund for the 2008 tax year. Petitioner is also not entitled to relief from joint and several liability under section 6015(b) for any part of the 2007 tax year.

II. Relief Under Section 6015(c)

Under section 6015(c), a divorced or separated spouse may elect to limit liability for a deficiency on a joint return to the portion allocable to him or her. A taxpayer can make a valid election only if: (1) the taxpayer is no longer married to, is not part of the same household of, or is legally separated from his or her spouse; (2) the taxpayer makes a timely election; and (3) the Secretary does not demonstrate that the taxpayer had actual knowledge at the time the taxpayer signed the return of an item giving rise to a deficiency. Sec. 6015(c)(3)(A), (B), and (C).

**[*16]** A.  Section 6015(c) Election

Under section 6015(c)(3)(C) a taxpayer's election of relief under this section is not valid if the Secretary demonstrates the taxpayer had actual knowledge, at the time of signing the tax return, of any item giving rise to a deficiency which is not allocable to the taxpayer.  In other words, a taxpayer cannot elect relief from joint and several liability under section 6015(c) for items attributable to his or her spouse that he or she knew about when he or she signed the tax return.  As noted above, respondent bears the burden of proving actual knowledge for this limitation to apply.

To prove actual knowledge of fictitious or inflated deductions, the Secretary must prove the taxpayer actually knew that the expenditure was not incurred or not incurred to that extent.  Sec. 1.6015-3(c)(2)(i)(B)(2), Income Tax Regs.  This knowledge limitation disqualifies only items giving rise to the deficiency that are not allocable to the requesting spouse.  Sec. 6015(c)(3)(C).  Consequently, respondent must prove petitioner had actual disqualifying knowledge of the items attributable to Ms. Griffin.  However, some of the items taken into account that gave rise to the deficiency may be allocated partly to Ms. Griffin and partly to petitioner.  Therefore, respondent must also prove petitioner had actual

[*17] disqualifying knowledge of the items giving rise to the deficiency which are partly allocated to Ms. Griffin.

For the 2007 tax year respondent must prove that petitioner had actual disqualifying knowledge of: cash charitable contributions, noncash charitable contributions, unreimbursed employee expenses, tax preparation fees, safe deposit box rental expenses, and student loan interest payments. Respondent must show that petitioner knew each expenditure was not incurred or not incurred to the extent claimed because the deductions are fictitious or inflated. See sec. 1.6015-3(c)(2)(i)(B)(2), Income Tax Regs. Respondent must also show that petitioner knew of the State income tax refund.

Respondent has met the burden of proving that petitioner knew about the unreported income and knew the fictitious expense deductions were not incurred or not incurred to the extent reported for tax year 2007. Petitioner admitted that he knew there were not any unreimbursed employee expenses for that year. He also admits that the noncash charitable contributions were not made because the expenses related to gifts to his stepchildren. Petitioner was in the room with Ms. Griffin when she was preparing their return for tax year 2007, and he could see there were not any expenses incurred for tax preparation. Further, he knew the family did not rent a safe deposit box, make any cash charitable contributions, or

[*18] pay student loan interest. Last, petitioner knew of the State income tax refund received in the 2007 tax year.

In addition, to support actual knowledge we may look to whether a requesting spouse made a deliberate effort to avoid learning about the item to be shielded from liability. Sec. 1.6015-3(c)(2)(iv), Income Tax Regs. Petitioner was offered the specific chance to review the Federal tax return for tax year 2007 but deliberately chose to not look at it. Accordingly, petitioner is not relieved of joint and several liability under section 6015(c) for the 2007 tax year.

For the 2008 tax year respondent must prove petitioner had actual disqualifying knowledge of the State income tax refund, charitable cash contributions, tax preparation expenses, and unreimbursed employee expenses. As noted above, petitioner's living and filing circumstances drastically changed for the 2008 tax year. Petitioner and Ms. Griffin no longer lived in the same household, and Ms. Griffin prepared the joint tax return independently. Respondent did not provide any information to show that petitioner had actual knowledge of the deductions claimed on the 2008 tax return. Ms. Griffin could have incurred expenses while living apart from petitioner and never indicated to him that she had the expenses. Further, petitioner did not know about the expenses through reviewing the Federal tax return because he was not given an

[*19] opportunity to see the return before it was filed.  Last, respondent did not provide any information to show that petitioner had actual knowledge of the State income tax refund's being excluded.  Accordingly, petitioner could validly elect section 6015(c) relief because respondent has not met his burden of proving petitioner knew about the erroneous items in the 2008 tax year.  See sec. 6015(c)(3)(C).

A taxpayer may make an election under section 6015(c)(3)(B) after a deficiency is asserted but not later than two years after the Secretary commences collection activities with respect to that taxpayer.  The statute does not specify at what point a deficiency is deemed to be asserted.  In other words the statute is silent to whether a deficiency can be asserted before the Commissioner issues a notice of deficiency.  When a statute is ambiguous or silent, we may look to the statute's legislative history to determine congressional intent.  Burlington N. R.R. v. Okla. Tax Comm'n, 481 U.S. 454, 461 (1987); Fernandez v. Commissioner, 114 T.C. 324, 329-330 (2000).  Through the Consolidated Appropriations Act, 2001, Pub. L. No. 106-554, app. G, sec. 313(a)(1), 114 Stat. at 2763A-640 (2000), Congress clarified section 6015(c) by allowing taxpayers to make the election "at any time after a deficiency for such year is asserted", subject to the two-year limitation noted above.  The conference report accompanying the change indicated

[*20] that a "deficiency is considered to have been asserted by the IRS at the time the IRS states that additional taxes may be owed. Most commonly, this occurs during the Examination process. It does not require an assessment to have been made". H.R. Conf. Rept. No. 106-1033, at 1023 (2001). This means that a taxpayer does not have to wait for an assessment and may elect relief under section 6015(c) once the Commissioner asserts additional tax during an audit. Further, according to section 1.6015-5(b)(3), Income Tax Regs., a request for relief may be made in connection to an audit or examination. While the election was made before respondent issued a notice of deficiency, the election was not premature because respondent had asserted a deficiency through the audit. See H.R. Conf. Rept. No. 106-1033, supra at 1023; sec. 1.6015-5(b)(5), Income Tax Regs. Accordingly, petitioner timely filed for section 6015(c) relief.

To make a valid section 6015(c) election, petitioner must also show he was no longer married to--or not a member of the same household as--Ms. Griffin when he made the section 6015(c) election. See sec. 6015(c)(3)(A)(i)(I) and (II). A judgment of dissolution of marriage was issued on November 24, 2009, for the marriage between petitioner and Ms. Griffin. Petitioner filed Form 8857, Request for Innocent Spouse Relief, on February 23, 2010. Accordingly, petitioner satisfies the section 6015(c)(3)(A)(i)(I) marriage requirement because he was not

[*21] married to Ms. Griffin when he elected relief under section 6015(c). Consequently, petitioner satisfies all the election requirements under section 6015(c) for the 2008 tax year.

B.  Section 6015(c) and (d) Allocation

Petitioner's liability is limited to the portion of the deficiency allocable to him for the 2008 tax year.  See sec. 6015(c)(1).  Generally the portion of the deficiency on a joint return allocated to an individual is the amount that bears the same ratio to the deficiency as the net amount of items taken into account in computing the deficiency and allocable to the individual under section 6015(d)(3) bears to the net amount of all items taken into account in computing the deficiency.  Sec. 6015(d)(1).  Items giving rise to a deficiency on a joint return shall be allocated between spouses as if separate returns had been filed.  Sec. 6015(d)(3)(A).  The requesting spouse is liable only for his or her proportionate share of the deficiency that results from the allocation.  Sec. 6015(d)(1).

In addition to attributing the fictitious deductions to Ms. Griffin for the 2008 tax year under section 6015(b), the misreported deductions are solely allocated to Ms. Griffin under section 6015(c) and (d).  As noted above, the touchstone for allocation rests on allocating items in the same manner as they would have been allocated if the spouses had filed separate returns for the taxable

[*22] year. See sec. 6015(d)(3)(A). Petitioner truthfully testified that he would not have claimed the fictitious deductions on his return.[7] His candor indicated that the fictitious deductions for tax the 2008 tax year should be allocated to Ms. Griffin. Further, petitioner was not involved in the preparation of the return for the 2008 tax year and was not in a position to add or question any potential deductions. Between the parties, we can deduce that Ms. Griffin would have claimed the fictitious deductions on her separate return because petitioner did not participate in the preparation of the joint return and he truthfully testified he would not have claimed the deductions on his own return. Accordingly, no portion of the deficiency related to the fictitious deductions is allocated to petitioner.

However, the State income tax refund is not solely attributable to Ms. Griffin, and consequently part of the deficiency resulting from the error will be allocated to petitioner. Erroneous items of income are allocated to the spouse who was the source of the income. Sec. 1.6015-3(d)(2)(iii), Income Tax Regs. In the absence of clear and convincing evidence of a different allocation, an erroneous item owned jointly by the spouses is allocated 50% to each spouse. Id. Petitioner

---

[7]In petitioner's words: "Tax returns for the Federal government aren't something you screw with. You do it the right way * * * you take deductions you're legally allowed and you don't take the ones you're not allowed. That's just me."

[*23] and Ms. Griffin owned the State income tax refund jointly and did not provide evidence to support an allocation other than 50% to each spouse. Accordingly, 50%, or $296, of the $592 State income tax refund is allocable to petitioner.

Pursuant to section 6015(d)(1), the amount of the deficiency allocable to each spouse is directly proportional to the net amount of erroneous items allocable to the spouse compared to the net amount of all erroneous items. The net amount of all erroneous items is $15,765 for the 2008 tax year.[8] The total deficiency for the 2008 tax year for petitioner and Ms. Griffin is $2,098. Following section 1.6015-3(d)(4)(i)(A), Income Tax Regs., petitioner is allocated $39.39 of the deficiency for the 2008 tax year.

Petitioner was eligible for relief and validly elected to limit his liability to the portion of the 2008 deficiency allocable to him under section 6015(c). Following the allocation guidelines under section 6015(d) and section 1.6015-3(d)(4)(i)(A), Income Tax Regs., petitioner may limit his liability to the portion of the deficiency that resulted from his share of the unreported State income tax refund. Petitioner is therefore relieved from joint and several liability for the 2008

_____

[8]The $15,765 includes deductions for unreimbursed employee expenses of $7,773, charitable cash contributions of $7,350, tax preparation expenses of $50, and State income tax refund of $592.

[*24] tax year, but for the $39.39 liability resulting from his share of the unreported State income tax refund.

III.  Relief Under Section 6015(f)

If relief is not available under 6015(b) or (c), section 6015(f) provides that the Commissioner may grant equitable relief from joint and several liability if he finds that, taking into account all of the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency.  Petitioner is entitled to relief for the 2008 tax year under both section 6015(b) and (c), and therefore the Court will not analyze the 2008 tax year for equitable relief under subsection (f).  In cases brought under section 6015(f), the Court applies a de novo standard of review as well as a de novo scope of review.  See Porter v. Commissioner, 132 T.C. 203, 210 (2009).  Petitioner bears the burden of proving that he is entitled to equitable relief under section 6015(f).  See Rule 142(a).  The Court has jurisdiction to determine whether a taxpayer is entitled to equitable relief under section 6015(f).  Sec. 6015(e)(1)(A).

Pursuant to section 6015(f), the Commissioner has issued revenue procedures the Commissioner uses in determining whether a taxpayer is entitled to relief from joint and several liability.  See Rev. Proc. 2003-61, 2003-2 C.B. 296,

**[\*25]** <u>modifying and superseding</u> Rev. Proc. 2000-15, 2000-1 C.B. 477.[9] Rev. Proc. 2003-61, <u>supra</u>, lists factors the Commissioner uses in deciding whether to grant section 6015(f) relief. The Court may consider these guidelines but is not bound by them. Rev. Proc. 2003-61, <u>supra</u>, provides a three-step analysis to follow in evaluating a request for relief. The first step includes seven threshold conditions that must be met to request equitable relief under section 6015(f). Respondent concedes that petitioner meets the threshold requirements of Notice 2012-8, 2012-4 I.R.B. 309, which for purposes of this case are substantially the same as the conditions in Rev. Proc. 2003-61, <u>supra</u>. Accordingly, petitioner meets the seven threshold conditions for equitable relief under Rev. Proc 2003-61, <u>supra</u>.

The second step of Rev. Proc 2003-61, sec. 4.02, 2003-2 C.B. at 298, provides three conditions that if met will ordinarily qualify a requesting spouse for relief under section 6015(f) with respect to an underpayment of a properly reported liability. This step is inapplicable to petitioner because he did not properly report the liability. Petitioner claimed erroneous deductions and failed to

---

[9]On January 23, 2012, the Commissioner published Notice 2012-8, 2012-4 I.R.B. 309, concerning a proposed revenue procedure that if finalized would revise the factors to be examined in determining a requesting spouse's claim for equitable relief.

[*26] report a State income tax refund. These errors disqualify petitioner from section 6015(f) relief under Rev. Proc. 2003-61, sec. 4.02, because he did not properly report his tax liability.

When the requesting spouse satisfies the seven threshold conditions but does not qualify for relief under Rev. Proc. 2003-61, sec. 4.02, he or she may still be eligible for equitable relief under section 6015(f). Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298. A requesting spouse is eligible for relief if, taking into account all facts and circumstances, it is inequitable to hold the requesting spouse liable for the underpayment. Rev. Proc. 2003-61, sec. 4.03(2)(a), contains a nonexclusive list of factors that the Commissioner considers when determining whether to grant equitable relief. The factors are: (1) marital status; (2) economic hardship; (3) in the case of a deficiency, knowledge or reason to know of the item giving rise to the deficiency; (4) the nonrequesting spouse's legal obligation; (5) significant benefit; (6) compliance with tax laws; (7) spousal abuse; and (8) mental and physical health of the nonrequesting spouse. This test cannot be applied mechanically. No single factor is determinative, and all factors are considered and weighed appropriately. Haigh v. Commissioner, T.C. Memo. 2009-140. The only factor that clearly favors granting petitioner relief for the

**[*27]** 2007 tax year is his marital status. The other factors either weigh against relief or are neutral.

In addition, the Court finds that petitioner significantly benefited from filing a joint return. When determining whether a requesting spouse significantly benefited directly or indirectly from the underpayment, the fact that the requesting spouse received a benefit of the return from the underpayment may be taken into account. Sec. 1.6015-2(d), Income Tax Regs. Petitioner benefited from filing a joint return with Ms. Griffin for the 2007 tax year because he was able to spend the refund from the joint return. Petitioner testified that he and Ms. Griffin jointly spent the Federal income tax refund for the 2007 tax year. The refund was erroneous, and therefore petitioner benefited from the joint return by using the money from the return in a manner of his choosing. Accordingly, petitioner is not entitled to relief from joint and several liability under section 6015(f) for the 2007 tax year.

IV. <u>Accuracy-Related Penalty</u>

Section 6662(a) and (b)(1) and (2) provides that a taxpayer is liable for a 20% accuracy-related penalty on any part of an underpayment attributable to negligence or disregard of rules or regulations, or any substantial understatement of income tax. For purposes of section 6662(a), negligence means any failure to

**[*28]** make a reasonable attempt to comply with the Code. Sec. 6662(c). A taxpayer is negligent if he or she fails to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence is strongly indicated where a taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit, or exclusion on a return that would seem to a reasonable person to be exceptionally beneficial under the circumstances. See sec. 1.6662-3(b)(1)(ii), Income Tax Regs.

For purposes of section 6662(a), disregard means any careless, reckless, or intentional disregard. Sec. 6662(c). A disregard of rules is careless if the taxpayer does not "exercise reasonable diligence to determine the correctness of a return position". Sec. 1.6662-3(b)(2), Income Tax Regs. A disregard of rules is reckless if the taxpayer "makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe." Id.

Petitioner was at least careless for the 2007 tax year. Petitioner did not make any effort to review the return when given the chance, much less determine whether any of the positions taken were correct. Before filing the 2007 tax return Ms. Griffin told petitioner that they expected a Federal income tax refund for that year, but petitioner did not make any effort to validate the positions required to

**[\*29]** receive the refund.  Accordingly, petitioner is liable for the 20% penalty for the 2007 tax year under section 6662(a) because he carelessly disregarded rules and regulations.

The accuracy-related penalty can be avoided if a taxpayer shows that he or she acted reasonably and in good faith.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted in good faith is factual and is made on a case-by-case basis.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Relevant factors for the Court to consider include the knowledge and experience of the taxpayer and reliance on the advice of a qualified professional.  Id.  Petitioner did not seek any professional tax advice with regard to the 2007 tax return.  He relied only on Ms. Griffin's conclusions that the positions taken to receive the refund were correct.

In conclusion, petitioner is not relieved of joint and several liability for the 2007 tax year.  Petitioner is, however, relieved of joint and several liability for the understatement of tax attributable to all of the erroneous deductions under section 6015(b) for the 2008 tax year.  Further, petitioner validly elected to limit his liability to the portion of the deficiency attributable to him under section 6015(c) and (d).  He is liable for a $39.39 deficiency, which is his share of the 2008 deficiency resulting from the unreported State income tax refund.

**[*30]** The Court has considered all of the arguments made by the parties and, to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.